**STATE of Missouri, Respondent,**

v.

**Dwight MOORE, Appellant.**

**No. ED 103832**

Missouri Court of Appeals,
Eastern District,
**DIVISION FOUR.**

Filed: May 9, 2017

Joshua Hawley, Jefferson City, Missouri, for respondent.

Maleaner Ryna Harvey, St. Louis, Missouri, for appellant.

## OPINION

James M. Dowd, Presiding Judge

Dwight Moore was convicted after a jury trial in the Circuit Court of the City of Saint Louis of one count of resisting a lawful stop and three counts of first-degree endangering the welfare of a child. On appeal, Moore contends that (1) there was insufficient evidence to convict him of resisting a lawful stop; (2) there was insufficient evidence to convict him of first-degree child endangerment; (3) the trial court plainly erred by failing to define the term "knowingly" and the phrase "acted with criminal negligence" in response to a request from the jury during its deliberations; and (4) the trial court plainly erred because it incorrectly numbered the one count for resisting a lawful stop and the three counts for first-degree child endangerment in the oral pronouncement and written judgment of his sentences.

Because we find that there was sufficient evidence from which a reasonable juror could convict Moore of one count of resisting a lawful stop and three counts of first-degree child endangerment, we affirm as to Moore's first and second points on appeal. Moore's third point is denied because we find no plain error. As to Moore's fourth point, we remand with instructions to the trial court to enter judgment *nunc pro tunc* to correct the clerical errors in the written judgment setting forth Moore's sentences.

## Factual and Procedural Background

On October 25, 2012, the St. Louis Metropolitan Police Department conducted an undercover investigation pursuant to which an undercover officer arranged to buy heroin from Reginald Saddler. Appellant Moore drove Saddler in Moore's vehicle to the location where Saddler and the officer had agreed to meet to complete the drug transaction. Moore parked next to the officer's vehicle so that Saddler could communicate with the officer through the passenger-side window of Moore's vehicle. While Saddler spoke with the officer, Moore encouraged Saddler to conclude his interaction with the officer. After the sale was complete, the officer communicated that fact to other police officers who then followed Moore from a distance as he drove his vehicle to a nearby street. The officers watched as Moore parked the vehicle and began a conversation through the window with a man who was standing in the street.

The officers then decided to arrest Moore and Saddler where they were parked. One officer pulled up and stopped his unmarked police vehicle behind Moore's vehicle with the siren on and the lights flashing. Several other officers wearing black vests with the word "police" printed on both sides approached Moore's vehicle, verbally identified themselves as police officers, and asked Moore and Saddler to exit the vehicle. Upon seeing the officers, Moore began driving away from where he was parked, striking with his vehicle the man whom he had been speaking with in the street. Moore drove away at a high rate of speed with the police in pursuit.

During the pursuit, Moore continued at a high rate of speed through residential streets and through an intersection without stopping at a stop sign. He and Saddler threw cash money from the vehicle. The police placed spike strips on Moore's anticipated route forcing Moore to stop his vehicle after he drove over the spike strips and his tires deflated.

Moore and Saddler were arrested at the scene and the officers found three children, ages two, three, and seven, in the

backseat of Moore's vehicle and none of them had on seatbelts or safety restraints. The children were in the vehicle during the drug transaction, the police officers' initial arrest attempt, and while Moore fled from police. Officers recovered the money thrown from Moore's vehicle, and determined that the serial numbers on the bills matched the money the undercover officer used in the drug transaction.

A jury convicted Moore of one count of resisting a lawful stop and three counts of first-degree child endangerment. The trial court orally sentenced Moore to seven years in prison for resisting a lawful stop and thirteen years in prison for each of the three counts of first-degree child endangerment. Two of the child-endangerment sentences were to run consecutively while the remainder of the sentences were to run concurrently, for a total of twenty-six years in prison. However, the numbers used by the court during its oral pronouncement and in its written judgment to describe the counts on which the convictions had been rendered were incorrect.

## I. Sufficiency of the Evidence to Prove Resisting a Lawful Stop

In his first point on appeal, Moore argues that there was insufficient evidence to support his conviction for resisting a lawful stop. Specifically, Moore contends the State submitted evidence insufficient to prove Moore knew or should have known that police officers were attempting to lawfully stop his vehicle, and that he fled from the officers for the purpose of preventing them from making the stop. We disagree.

Appellate review of the sufficiency of the evidence for a conviction is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt. *State v. Lammers*, 479 S.W.3d 624, 632 (Mo.banc 2016) (citing *State v. Hunt*, 451 S.W.3d 251, 257 (Mo.banc 2014)). The evidence and all reasonable inferences are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict. *State v. Jones*, 479 S.W.3d 100, 105 (Mo.banc 2016). A court may not supply missing evidence or give the State the benefit of unreasonable, speculative, or forced inferences. *Hunt*, 451 S.W.3d at 257.

Section 575.150 [1] sets forth the crime of resisting a lawful stop. The relevant portion of § 575.150 provides:

1. A person commits the crime of resisting or interfering with arrest, detention, or stop if, knowing that a law enforcement officer is making an arrest, or attempting to lawfully detain or stop an individual or vehicle, or the person reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or lawfully stop an individual or vehicle for the purpose of preventing the officer from effecting the arrest, stop or detention, the person:

(1) Resists the arrest, stop or detention of such person by using or threatening the use of violence or physical force or by fleeing from such officer . . . .

. . .

3. A person is presumed to be fleeing a vehicle stop if he or she continues to operate a motor vehicle after he or she has seen or should have seen clearly visible emergency lights or has heard or should have heard an audible signal emanating from the law enforcement vehicle pursuing him or her.

---

1. All statutory references are to RSMo 2000 unless otherwise noted.

In this case, the State submitted evidence from which a reasonable juror could find that Moore resisted a lawful stop. The undercover officer testified at trial that Moore verbally urged Saddler to finish his encounter with the officer. Several officers testified that soon after the heroin sale was complete, an unmarked police car, with its lights visibly flashing and its siren on, stopped behind Moore's vehicle. These officers also testified that Moore fled in his vehicle at a high rate of speed when several officers wearing vests with the word "police" printed on both sides approached Moore's car, announced they were police officers, and instructed Moore to exit his vehicle. In addition to this testimony, there was also evidence that the serial numbers on the money thrown from the vehicle as Moore fled matched the money used to complete the drug transaction. A reasonable juror could conclude that Moore resisted a lawful stop because the evidence indicates that Moore knew officers were attempting to stop his vehicle almost immediately after a drug transaction occurred between Saddler and the undercover officer in Moore's presence, and that Moore fled in his vehicle in an effort to avoid the stop.

## II. Sufficiency of the Evidence to Prove First–Degree Child Endangerment

Moore contends in his second point on appeal that there was insufficient evidence to support his convictions on three counts of first-degree child endangerment. Moore argues that because the children in his vehicle were not actually injured, the evidence was insufficient to prove Moore acted knowingly in a manner that created a substantial risk to the life, health, or body of any of the three children when he fled from police. We disagree.

When reviewing the sufficiency of the evidence, an appellate court is limited to a determination of whether a reasonable juror could have found the defendant guilty of each element of the crime beyond a reasonable doubt. *Lammers*, 479 S.W.3d at 632. All evidence and reasonable inferences are viewed in the light most favorable to the verdict, while evidence and inferences contrary to the verdict are disregarded. *Jones*, 479 S.W.3d at 105.

A person commits the crime of first-degree endangering the welfare of a child if the State proves the following elements: (1) the defendant engaged in conduct, (2) in so doing, the defendant created a substantial risk to the life, body, or health of a child, (3) the victim was less than seventeen years old, and (4) the defendant acted knowingly with respect to the facts and circumstances. § 568.045.1(1); *State v. Smith*, 502 S.W.3d 689, 695 (Mo.App.E.D. 2016). Moore contends that the State did not present sufficient evidence to prove the second and fourth elements of first-degree child endangerment.

### A. Substantial Risk to the Children's Lives, Bodies, or Health

First, we consider whether the State presented sufficient evidence that Moore created a substantial risk to the life, body, or health of each of the three children in his vehicle when he fled from police. Section 558.45.1(1) does not require the victim to sustain an injury; instead, the defendant's conduct must create only a substantial *risk* of harm to be actionable. *Smith*, 502 S.W.3d at 695. In the context of the statute, substantial means "not seeming or imaginary," and risk means "the possibility of loss, injury, disadvantage or destruction." *Id.* Whether a defendant created a substantial risk to the victim is determined by considering the totality of

the circumstances from the evidence presented. *Id.*

Here, considering the totality of the circumstances, the evidence was sufficient to permit a reasonable juror to conclude that Moore created a substantial risk to the life, body, and health of each of the three children in his vehicle. While Moore contends he did not create a substantial risk to the children because they were not actually injured, the State was required to prove only that Moore created a substantial risk of harm, not actual harm.

In addressing whether the State met its burden as to this element, we turn to two cases that are directly on point. In *State v. Randle*, testimony that the defendant, while fleeing from police, drove his vehicle at a high rate of speed, through stop signs, and over spike strips, all while his child was unrestrained in the vehicle, was sufficient to prove that the defendant had placed his child at a substantial risk of harm. 456 S.W.3d 535, 543–44 (Mo.App. E.D. 2015). Similarly, in *State v. Hopson*, the State presented evidence that the defendant drove at a high rate of speed through an area with pedestrians present as he fled from police. 168 S.W.3d 557, 563 (Mo.App.E.D. 2005). This Court held that the evidence was sufficient to prove that the defendant placed his child at a substantial risk of harm because his conduct made it probable an accident would occur, even though one did not occur and the child was not injured. *Id.*

As in *Randle*, here there is evidence that Moore fled from police at a high rate of speed, drove through a stop sign without stopping, and ran over spike strips, all while the three children in his vehicle were not wearing seatbelts. Also, as in *Hopson*, there is evidence here that Moore drove at a high rate of speed through an area where pedestrians were commonly present. Moreover, Moore, actually *hit* a pedestrian with his vehicle during his flight. Considering this evidence, a reasonable juror could find that Moore created a substantial risk to the lives, bodies, and health of the children because his conduct made it probable that an accident causing injury to the children would occur, even though no accident occurred and the children were not injured.

B. Knowingly Acting in a Manner that Created a Substantial Risk to the Children

Next, we consider whether the State presented sufficient evidence to prove that Moore knowingly acted in a manner that created a substantial risk to the three children in his vehicle. A person acts knowingly when the person is aware that his or her conduct is practically certain to cause a result. § 562.016.3. Knowledge may be proven by direct evidence and reasonable inferences drawn from the circumstances surrounding the incident. *State v. Jones*, 427 S.W.3d 191, 199 (Mo. banc 2014) (citing *State v. Burrell*, 160 S.W.3d 798, 802 (Mo.banc 2005)). In addition to reasonable inferences drawn from surrounding facts, a fact finder may reasonably infer a defendant's mental state from the act itself. *Smith*, 502 S.W.3d at 696–97. In a prosecution for first-degree child endangerment, it is not required that the defendant be aware that resulting harm was practically certain; rather, the State must prove the practical certainty of the *risk* of harm. *Jones*, 427 S.W.3d at 199.

The defendant in *State v. Riggs* argued that the State did not present sufficient evidence to show she knowingly created a risk to her two-year-old son when he drowned in a pond after she failed to supervise him, because the evidence did not prove that the defendant was practically certain her failure to supervise her child would result in his death. 2 S.W.3d 867,

873 (Mo.App.W.D. 1999). The court noted that under § 568.045, the State was not required to prove the defendant had been practically certain that her failure to supervise her son would result in his death. *Id.* at 873. Instead, the State was required to prove that the defendant knew her failure to supervise her son was practically certain to create a substantial risk of endangering the child, regardless of whether he was actually harmed. *Id.* The court held that a reasonable juror could have found that the defendant knowingly created a risk of harm to her child, because the State presented evidence that she permitted her two-year-old son to play near an unfenced duck pond without supervision for forty-five minutes. *Id.*

Here, as in *Riggs*, § 568.045 required the State to prove that Moore knew his actions were practically certain to create a risk of harm to the children, not that Moore knew actual harm to the children was practically certain to result. The State presented evidence that Moore fled from police at a high rate of speed, drove through a stop sign at an intersection, and hit a pedestrian, all while the children were in the car and were not wearing proper seat restraints. From this evidence, a reasonable juror could conclude that Moore knew he was driving in a manner that was practically certain to create a substantial risk of harm to the children in his vehicle.

### III. The Trial Court's Failure to Define the Term "Knowingly" and the Phrase "Acted with Criminal Negligence" in Response to the Jury's Request During Its Deliberations

In his third point on appeal, Moore argues that the trial court plainly erred because the court failed to define "knowingly" and "acted with criminal negligence" when the jury asked the court the difference between these concepts during its deliberations. Moore contends that it would be reasonable to conclude that had the court defined theses terms for the jury, he more likely would have had a more favorable outcome as to the three first-degree child endangerment charges. Therefore, Moore reasons, he suffered manifest injustice from the trial court's alleged error. We disagree.

We note at the outset of our discussion that the response to a jury question is within the trial court's sound discretion, and the practice of exchanging communications between the judge and jury is not recommended. *Roberts v. State*, 232 S.W.3d 581, 584 (Mo.App.E.D. 2007). Therefore, neutral and generic responses about being guided by the evidence presented and following the instructions previously given are the safest, most favored responses. *Id.*

We first address the court's failure to define the phrase "acted with criminal negligence." We hold that Moore invited any error relating to the failure to define that phrase because he submitted his own jury instruction for second-degree child endangerment that omitted the mandatory language defining "acted with criminal negligence." We further find that Moore's claim that the trial court erred by failing to define the term "knowingly" is simply without merit. Because the practice of exchanging communications between the judge and jury is not recommended, and because the mandatory instruction for first-degree child endangerment gives the State and the defendant the option to leave out the definition of "knowingly," the trial court had no duty to provide that definition in response to the jury's question.

Recognizing that his third point was not properly preserved for review, Moore requests that this Court re-

view for plain error, pursuant to Rule 30.20.[2] Under Rule 30.20, plain error review is discretionary, and it is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review. *State v. Jones*, 427 S.W.3d 191, 195 (Mo. banc 2014). An appellant's point will be reviewed for plain error only when the appellant's request for plain error review establishes facially substantial grounds for believing that the trial court's error was evident, obvious, and clear, and that manifest injustice or miscarriage of justice has resulted. *Id.* Plain error can serve as the basis for granting a new trial on direct appeal only if the error was outcome-determinative. *State v. Baxter*, 204 S.W.3d 650, 652 (Mo.banc 2006). Manifest injustice is determined by the facts and circumstances of the case, and the appellant bears the burden of establishing manifest injustice. *Id.*

Rule 28.02(c) states that whenever there is an MAI–CR instruction or verdict form applicable under the law and the MAI–CR's Notes on Use, the MAI–CR instruction or verdict form shall be used to the exclusion of any other instruction or verdict form. If the Notes on Use to the instruction applicable to the crime require that a term be defined, then that term must be defined and included in the definition of the crime. MAI–CR 3d 333.00. If the Notes on Use merely *permit* the defining of a term, that term may be defined upon the request of the State or the defendant or on the court's own motion. *Id.*

 The proffering of an incorrect instruction to the trial court is an invited error by the party who proffered the instruction. *Id.* It is counter to the clear directives of Missouri law to allow a defendant to both proffer an instruction to the

trial court and to complain that the trial court's submission of that instruction to the jury is reversible error. *Id.* When a party requests that the trial court give a particular instruction, the party waives review of the trial court's submission of that instruction to the jury. *Id.* Essentially, plain error review should not be used to impose a duty on the trial court to correct erroneous instructions proffered by the complaining party. *Id.*

Moore was indicted for the offense of first-degree child endangerment. The State offered MAI–CR 3d 322.10, the mandatory jury instruction for this offense. Moore, for his part, offered the instruction for the lesser included offense of second-degree child endangerment, MAI–CR 3d 322.11. The trial court submitted both instructions to the jury. MAI–CR 3d 322.10 requires the jury to find that the defendant "acted knowingly with respect to the facts and circumstances" when creating a substantial risk to a child, while MAI–CR 3d 322.11, the instruction for second-degree child endangerment, requires the jury to find that the defendant "acted with criminal negligence." Moore's proffered instruction omitted the portion of MAI–CR 3d 322.11 that states:

> As used in this instruction, the term "acted with criminal negligence" means that one fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation.

During its deliberations, the jury asked the trial court the difference between the term "knowingly" and the phrase "acted with criminal negligence." Both the State and Moore told the court that they had not

**2.** All rules references are to the Missouri Supreme Court Rules (2016).

defined these terms when they submitted their instructions. The parties also agreed that the court should submit a response to the question reminding the jury "you must be guided by the instructions provided by the court and the evidence as you recall."

Moore claims that regardless of what he submitted, the trial court had a duty to correctly instruct the jury, and the court breached this duty by failing to provide definitions of "knowingly" and "acted with criminal negligence" when the jury asked the court to explain the difference between these terms. Moore further argues that this Court should review for plain error because the trial court's failure to correct any error in or confusion caused by the proffered instructions is grounds for reversal. We disagree.

First, as to the trial court's failure to define "acted with criminal negligence," the Missouri Supreme Court addressed a similar issue in *State v. Bolden*. In *Bolden*, the defendant and the State jointly submitted a defense-of-others instruction to the trial court. *Id.* at 804. After the defendant was convicted of first-degree assault, the defendant claimed the trial court plainly erred by giving the defense-of-others instruction to the jury because the instruction contained errors, including inconsistencies with the applicable MAI–CR jury instruction. *Id.* at 804–05. The Court declined to review for plain error, holding that a trial court does not have a duty to correct erroneous instructions submitted by a party. *Id.* at 806. The Court also held that the defendant waived appellate review because the defendant invited the error and could not take advantage of her self-invited error on appeal. *Id.*

Here, Moore submitted an incorrect jury instruction to the trial court for second-degree child endangerment; his proffered instruction was inconsistent with MAI–CR 3d 322.11, the mandatory instruction for the offense. Specifically, Moore's instruction omitted the language of MAI–CR 3d 322.11 that explains the meaning of the phrase "acted with criminal negligence" to the jury. *Id.* Applying the principles from *Bolden*, we find that Moore waived review of the instruction for second-degree child endangerment because Moore invited the error by proffering an instruction inconsistent with the mandatory MAI–CR instruction for the offense.

Turning to Moore's claim that the trial court erred by failing to define "knowingly," we note that the mandatory instruction for first-degree child endangerment requires the court to define "knowingly" only if the State or the defendant properly requests the definition in writing, and neither Moore nor the State requested the definition. In light of these facts, and given that in general it is not recommended that the trial court exchange communications with the jury, we cannot convict the trial court of an abuse of discretion for failing to define "knowingly" here.

And certainly the trial court did not commit plain error. To support his claims of manifest injustice, Moore argues that the jury's question regarding the difference between "knowingly" and "acted with criminal negligence" indicates that the jury was confused about the difference between first-degree and second-degree endangering the welfare of a child. Moore contends that thus there is at least a reasonable probability that the jury would have convicted him of second-degree instead of first-degree child endangerment had the trial court defined "knowingly" and "acted with criminal negligence." We disagree.

It is unreasonable to conclude that the jury would have been more likely to convict Moore of second-degree child endangerment instead of first-degree child endangerment had the trial court defined "knowingly" and "acted with criminal negligence." MAI–CR 3d 322.10, the mandato-

ry instruction for first-degree child endangerment, requires a jury to find that a defendant knowingly created a risk of harm to a child. A defendant acts "knowingly" when he is aware that his conduct is practically certain to cause a result. § 562.016.1. MAI–CR 3d 322.10 requires this definition of "knowingly" to be included in an instruction only if a party properly requests in writing that the court include the definition. Conversely, MAI–CR 3d 322.11 states that a defendant commits the crime of second-degree child endangerment if he acts with criminal negligence in creating a substantial risk of harm to a child. MAI–CR 3d 322.11 further explains, in the sentence omitted by Moore, that "act[ing] with criminal negligence" means a defendant "fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow."

The jury heard testimony that the three children in Moore's vehicle were not in car seats or wearing seatbelts when police approached his vehicle. Additionally, Moore fled from police, drove at a high rate of speed, and committed numerous traffic violations with the children in the vehicle. In light of the overwhelming evidence that Moore knowingly endangered the children—i.e., that he drove in a manner practically certain to cause a risk of harm and did not merely fail to be aware of such a risk—it is not reasonable to conclude that had the definitions of "knowingly" and "acted with criminal negligence" been provided, the jury would have been more likely to convict Moore of the lesser offense. Thus, Moore has not shown that he suffered manifest injustice or a miscarriage of justice due to the trial court's alleged error.

## IV. Correction of Sentence in the Oral Pronouncement and the Written Judgment

▊ In his fourth point on appeal, Moore claims that the trial court plainly erred because it incorrectly numbered the one count for resisting a lawful stop and the three counts for first-degree child endangerment in the oral pronouncement and written judgment of his sentences. Moore therefore requests that this case be remanded for resentencing. Because we find that Moore did not suffer manifest injustice or a miscarriage of justice as a result of these clerical errors, we remand to the trial court with instructions to correct the mistakes in the written judgment regarding the numbering of Moore's four counts.

▊ Moore concedes that his fourth point was not properly preserved for review and he requests that this Court review for plain error. Plain error lies where the alleged error facially establishes substantial grounds for believing manifest injustice or a miscarriage of justice occurred. *State v. Taylor*, 466 S.W.3d 521, 533 (Mo. banc 2015). Such errors must be evident, obvious, and clear. *Id.*

Here, during the trial court's oral pronouncement of Moore's sentences, the court erroneously numbered Moore's count for resisting a lawful stop as Count IV instead of Count I, which was the number given to this charge in the indictment. The court also erroneously numbered the defendant's three counts for first-degree child endangerment as Counts V, VI, and VII, even though these counts were numbered as Counts II, III, and IV in the indictment. Additionally, the court modified its written judgment so that the erroneous count numbers in its oral pronouncement were repeated in its written judgment.

▊ While both parties contend that there is a material difference between the trial court's oral pronouncement of

Moore's sentences and its written judgment, we disagree. There is no material difference between the oral pronouncement and the written judgment. Nevertheless, the errors that appear in both are merely clerical. Clerical errors in the sentence and judgment in a criminal case may be corrected by an order *nunc pro tunc* if the written judgment does not reflect what actually was done. *State v. Lemasters,* 456 S.W.3d 416, 426 (Mo.banc 2015) (citing *Soehlke v. Soehlke,* 398 S.W.3d 10, 22 (Mo. banc 2013)). The label "clerical mistake" is not intended to designate who made the mistake, but what type of mistake was made. *McGuire v. Kenoma, LLC,* 447 S.W.3d 659, 663 (Mo.banc 2014). As such, a clerical mistake can be committed by a judge or clerk, but the correction of the mistake must be clerical insofar as it must not effect a substantive change to the party's rights. *Id.* In a criminal case, Rule 29.12(c) allows the court to amend its records according to the truth, so that they accurately express the history of the proceedings. *Lemasters,* 456 S.W.3d at 426 (citing *McGuire,* 447 S.W.3d at 663). If there exists in the record a basis to support an amendment to the judgment and the trial court's intentions regarding the defendant's sentence are clear from the record, such mistakes can be corrected by a *nunc pro tunc* order. *State v. Carroll,* 207 S.W.3d 140, 143 (Mo.App.E.D. 2006).

In *State v. Carroll,* the trial court sentenced the defendant as a prior and persistent offender, but it failed to mention the defendant's status as a prior and persistent offender during its oral pronouncement of the sentence and in its written judgment. *Id.* Even though the trial court failed to mention the defendant's status in its oral pronouncement and its written judgment, this Court held that the court's omission in the written judgment was a clerical error that could be corrected with a *nunc pro tunc* order, because an examination of the record revealed that it was clearly the trial court's intention to sentence the defendant as a prior and persistent offender. *Id.* This Court also suggested that when the oral pronouncement of a sentence is unambiguous, it controls, but where the pronouncement is ambiguous on an issue regarding the sentence, an appellate court should examine the entire record. *Id.*

Here, the trial court's incorrect numbering of Moore's counts in both its oral pronouncement and its written judgment were clerical errors that did not result in manifest injustice or a miscarriage of justice to Moore. Despite the erroneous numbering, the correct correspondences between Moore's convictions and his sentences are readily discernible. Following its oral pronouncement, the trial court told Moore that he was being sentenced to seven years in prison for resisting a lawful stop, and thirteen years in prison for each of the child endangerment counts. The court also explained to Moore that he was being sentenced to a total of twenty-six years in prison, because two of the sentences for child endangerment were to be served consecutively while the remainder of the sentences were to be served concurrently. Even though the court incorrectly numbered the counts, its intent to sentence Moore to seven years for resisting a lawful stop and thirteen years for each count of first-degree endangering the welfare of a child, with two of the sentences for child endangerment running concurrently, is clear from the record. Therefore, as in *Carroll,* the court's intentions regarding sentencing were clear and the incorrect numbering of Moore's counts in the written judgment should be corrected with a *nunc pro tunc* order.

## Conclusion

For the reasons stated above, we affirm the judgment of the trial court as to

Moore's first, second, and third points on appeal. As to Moore's fourth point on appeal, we remand with instructions to the trial court to enter judgment *nunc pro tunc* to correct the erroneous numbering of Moore's counts in the written judgment setting forth his sentences.

Kurt S. Odenwald, J., and Gary M. Gaertner, Jr., J., concur.