

# In the Missouri Court of Appeals
# Eastern District

**DIVISION ONE**

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED108321 |
| | ) | |
| Respondent, | ) | |
| | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | Cause No. 1711CR-02914-01 |
| | ) | |
| JOHN R. WRIGHT, | ) | Honorable Ted House |
| | ) | |
| Appellant. | ) | Filed: September 15, 2020 |

## OPINION

John R. Wright ("Defendant") appeals the trial court's judgment entered upon a jury verdict finding him guilty of one count of second-degree robbery, one count of armed criminal action, and one count of third-degree assault. Defendant raises two points on appeal. In his first point, Defendant argues that the trial court plainly erred in entering judgment upon the jury's verdict finding him guilty of both second-degree robbery and third-degree assault because doing so violated Defendant's Fifth Amendment right to be free from double jeopardy. Specifically, Defendant asserts that his Fifth Amendment right against double jeopardy was violated because third-degree assault is a lesser-included offense of second-degree robbery. And in his second point, Defendant contends that the trial court plainly erred in not answering the jury's question during deliberation asking whether Defendant's fists could be considered a "dangerous

1

instrument," and instead directing the jury to be guided by the instructions it had received and the evidence as the jury recalled it.

Finding that the trial court did not err, we affirm the judgment of the trial court.

## I. Factual and Procedural Background

On or about September 1, 2017, Defendant was charged with one count of first-degree robbery for forcibly stealing an automobile, one count of armed criminal action, and one count of second-degree assault arising out of Defendant's taking of Victim's vehicle on or about August 29, 2017. A jury trial was held on August 20, 21, and 22, 2019. At trial, testimony was given by several people, including Victim, Victim's wife, Victim's neighbor, the police officer who collected the forensic evidence in the case, and the police detectives who interviewed Defendant after he was arrested. Additionally, the video recording of Defendant's interview with police detectives and forensic evidence collected from the scene of the crimes at issue were also admitted into evidence.

In sum, the evidence showed that, on the morning of August 29, 2017, Defendant misappropriated Victim's vehicle as Victim was pulling out of his garage. Specifically, Victim testified at trial that, after he backed out of his garage, Defendant threw a landscaping brick at Victim's vehicle, which cracked the passenger-side window. Victim further testified that Defendant thereafter opened Victim's unlocked car door and hit Victim once in the head with a landscaping brick and then punched him multiple times until Victim was able to roll out of his vehicle. Defendant then entered Victim's vehicle and drove away. Victim's wife called 911, and Victim's neighbor (who is a registered nurse) administered first aid to Victim. Victim's neighbor testified at trial that Victim was bleeding profusely from a "gaping wound above [his] eyebrow" that was about two inches long and was so deep that she could see the bone of Victim's skull.

Victim's neighbor further testified that, while she was treating Victim, he told her that Defendant had hit him in the face with some kind of brick before beginning to punch him.[1] The neighbor also stated that Victim's wound was consistent with being caused by an object other than Defendant's fists, as the wound "was laid open to the bone." An ambulance took Victim to the hospital, where he was diagnosed with a concussion and received 19 stitches for the wound above his eyebrow.

Defendant was arrested two days later on August 31, 2017. Defendant stated during his interview with police detectives that he had run from a traffic stop the night before (August 28, 2017) he took Victim's car, and that he was looking for a way to get back home. Defendant further stated to the detectives that he ran up to Victim's car with a landscaping brick when he saw Victim leaving his house and then proceeded to take Victim's vehicle. Defendant admitted to punching Victim and initially told detectives that he did not hit Victim with a brick, but then said he could not really remember if he did or did not strike Victim with a brick. Defendant's DNA was found on two landscaping bricks surrounding some bushes on Victim's property, and another brick from said landscaping arrangement was missing and never found by Victim, his wife, or the police.

When the case was submitted to the jury, instructions were given for first-degree robbery, second-degree robbery (as a lesser-included offense of first-degree robbery), armed criminal action, second-degree assault, and third-degree assault (as a lesser-included offense of second-degree assault). During deliberation, the jury sent a note to the trial court asking if Defendant's fists could be considered a dangerous instrument. The trial court responded to the jury that, "I am not permitted to directly answer your question. You are instructed to be guided in your

---

[1] Victim's neighbor admitted during her testimony that she had not stated in her written statement to the police that Victim told her Defendant hit him with a brick.

deliberations by the instructions you have received from the Court and by the evidence as you recall it." Neither the State nor Defendant objected to the trial court's response. The jury thereafter returned its verdict finding Defendant guilty of second-degree robbery, armed criminal action, and third-degree assault. The trial court sentenced Defendant to a total of 22 years' imprisonment in the Missouri Department of Corrections.[2, 3]

This appeal follows.

## II. Standard of Review

Defendant concedes that neither of his points on appeal were preserved for appellate review, and instead requests that this Court apply plain error review pursuant to Rule 30.20.[4] *See State v. Horton,* 325 S.W.3d 474, 477 (Mo. App. E.D. 2010) (stating that "double jeopardy issues must be raised 'at the earliest opportunity and preserved at each step of the judicial process'") (quoting *Strong v. State,* 263 S.W.3d 636, 646 (Mo. banc 2008)); *see also State v. Dominguez-Rodriguez,* 471 S.W.3d 337, 342 (Mo. App. E.D. 2015) (explaining that counsel must specifically object to the allegedly erroneous instruction at trial and in a motion for new trial in order to preserve the issue for appellate review) (citing *State v. Banks,* 434 S.W.3d 100, 102 (Mo. App. E.D. 2014)). Pursuant to Rule 30.20, we exercise our discretion to review Defendant's claims of plain error affecting his substantial rights. *See State v. Nickels,* 598 S.W.3d 626, 635 (Mo. App. E.D. 2020); *State v. Moore,* 518 S.W.3d 877, 886 (Mo. App. E.D. 2017).

---

[2] Specifically, the trial court sentenced Defendant to 12 years' imprisonment for second-degree robbery and 10 years' imprisonment for armed criminal action, with those sentences to run consecutively, and to 3 years' imprisonment for third-degree assault, with that sentence to run concurrently with the other two.

[3] Prior to trial, the trial court found that Defendant was a prior offender pursuant to § 558.016; however, in its judgment entered upon the jury's verdict, the court did not check the applicable box stating that Defendant was a prior offender, instead marking the box next to "Not Applicable." Despite this inconsistency, the sentences levied by the trial court were permitted pursuant to §§ 558.011, 570.025, 565.054, and 571.015, as the lengths of the sentences were within the allowed range of punishment under those statutes for non-prior offenders.

[4] All references are to Missouri Supreme Court Rules (2019).

"Plain error" is that which is "evident, obvious, and clear." *State v. Hudson,* 386 S.W.3d 177, 178 (Mo. App. E.D. 2012); *State v. Myles,* 479 S.W.3d 649, 655 (Mo. App. E.D. 2015). When plain error review is requested, we apply a two-step analysis to determine (1) "whether the asserted claim of plain error facially establishes substantial grounds to believe that a manifest injustice or miscarriage of injustice has occurred," and if so, (2) "whether manifest injustice or a miscarriage of justice actually occurred." *Hudson,* 386 S.W.3d at 178; *see also State v. Starks,* 470 S.W.3d 410, 414 (Mo. App. E.D. 2015).

### III.     Discussion

Point I

In his first point on appeal, Defendant argues that the trial court plainly erred in entering judgment upon the jury's verdict finding him guilty of both second-degree robbery under § 570.025 and third-degree assault under § 565.054.[5] Defendant asserts that the trial court doing so violated his Fifth Amendment right against double jeopardy because third-degree assault is a lesser-included offense of second-degree robbery, as third-degree assault is encompassed within the injury element of second-degree robbery. Concluding that third-degree assault is not a lesser-included offense of second-degree robbery, we find that Defendant's claim of plain error does not facially establish substantial grounds showing that manifest injustice or a miscarriage of justice occurred.

We first note that the issue of whether third-degree assault is a lesser-included offense of second-degree robbery such that a defendant's constitutional right against double jeopardy is violated has not been addressed by any Missouri court since the statutes at issue were last amended. On January 1, 2017, significant revisions to Missouri's criminal code became

---

[5] All references are to Mo. Rev. Stat. Cum. Supp. 2017, unless otherwise stated.

5

effective, including substantive changes to the statutes establishing what acts constitute third-degree assault (§ 565.054) and second-degree robbery (§ 570.025). Thus, because Defendant committed the acts at issue in August of 2017, we analyze whether Defendant's Fifth Amendment right against double jeopardy was violated using the newly-effective versions of those statutes.

The right to be free from double jeopardy derives from the Fifth Amendment of the United States Constitution and is applicable to the states through the Fourteenth Amendment. *Horton,* 325 S.W.3d at 477; *see also State v. Daws,* 311 S.W.3d 806, 808 (Mo. banc 2010). "The double jeopardy clause 'contains two distinct protections for criminal defendants: (a) protection from successive prosecutions for the same offense after either an acquittal or a conviction and (b) protection from multiple punishments for the same offense.'" *Daws,* 311 S.W.3d at 808 (quoting *State v. Flenoy,* 968 S.W.2d 141, 143 (Mo. banc 1998)). However, prosecution for multiple offenses arising out of the same conduct does not automatically violate a defendant's Fifth Amendment right. *State v. Reando,* 313 S.W.3d 734, 738 (Mo. App. W.D. 2010); *Kilcrease v. State,* 479 S.W.3d 168, 172 (Mo. App. E.D. 2015). Rather, "a defendant may be charged with and convicted of several offenses arising from the same transaction, incident, or set of facts without offending the double-jeopardy clause if the legislature intended to punish the conduct under more than one statute." *State v. Walker,* 352 S.W.3d 385, 387 (Mo. App. E.D. 2011).

When determining whether the legislature intended for a criminal defendant to be subject to cumulative punishments for the same conduct, we must first look to the statutes at issue under which the defendant was convicted. *Horton,* 325 S.W.3d at 478. Neither § 570.025, under which Defendant was convicted of second-degree robbery, nor § 565.054, under which Defendant was convicted of third-degree assault, expressly address whether the legislature intended cumulative

6

punishment for the two offenses. Thus, because §§ 570.025 and 565.054 are silent on the issue, we must examine whether cumulative punishment is permitted for the same conduct pursuant to § 556.041, which states the legislature's general intent regarding cumulative punishment. *Horton,* 325 S.W.3d at 478; *Walker,* 352 S.W.3d at 388.

Section 556.041 states that:

When the same conduct of a person may establish the commission of more than one offense he or she may be prosecuted for each such offense. Such person may not, however, be convicted of more than one offense if:

(1) One offense is included in the other, as defined in section 556.046; or

(2) Inconsistent findings of fact are required to establish the commission of the offenses; or

(3) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or

(4) The offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

As referenced in § 556.041(1), § 556.046.1 states that an offense is a lesser-included offense when:

(1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(2) It is specifically denominated by statute as a lesser degree of the offense charged; or

(3) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein.

In this case, Defendant argues that third-degree assault is a lesser-included offense of second-degree robbery pursuant to § 556.046.1(1). Defendant specifically asserts that the same or less than all of the facts are required to prove third-degree assault as those required to prove an element of second-degree robbery. When analyzing whether an offense is a lesser-included

7

offense pursuant to § 556.046.1(1), we focus on the statutory elements of the offenses rather than the evidence offered at trial. *Horton,* 325 S.W.3d at 479 (citing *State v. McTush,* 827 S.W.2d 184, 188 (Mo. banc 1992)). "'The elements of the two offenses must be compared in theory without regard to the specific conduct alleged.'" *Id.* (quoting *State v. Derenzy,* 89 S.W.3d 472, 474 (Mo. banc 2002)). "An offense is a lesser included offense if it is impossible to commit the greater without necessarily committing the lesser." *Derenzy,* 89 S.W.3d at 474; *see also State v. Tremaine,* 315 S.W.3d 769, 777 (Mo. App. W.D. 2010). Further, "[a]n offense is not 'lesser included' if it includes any necessary element not required for the other offense." *Smith v. State,* 324 S.W.3d 497, 499 (Mo. App. E.D. 2010) (citing *Becker v. State,* 260 S.W.3d 905, 908 (Mo. App. E.D. 2008)).

From examining the required elements of both §§ 570.025 and 565.054, we conclude that third-degree assault is not a lesser-included offense of second-degree robbery under the newly-effective versions of those statutes. Section 570.025.1 relevantly states that a person commits second-degree robbery "if he or she forcibly steals property and in the course thereof causes physical injury to another person." Comparatively, § 565.054 states that a person commits third-degree assault "if he or she knowingly causes physical injury to another person." Defendant contends that third-degree assault (knowingly causing physical injury to another person) is subsumed within the injury element of second-degree robbery ("causes physical injury to another person") because said injury element of second-degree robbery does not assign an applicable mental state for that element, and such injury element therefore requires a *mens rea* of purposefully or knowingly pursuant to § 562.021(3). For that reason, Defendant asserts that third-degree assault requires the same or less than all of the facts required to prove the injury element of second-degree robbery.

It is true that § 562.021(3) states "if the definition of any offense does not expressly prescribe a culpable mental state for any elements of the offense, a culpable mental state is nonetheless required and is established if a person acts purposely or knowingly…." However, § 562.021(2) states that:

> If the definition of an offense prescribes a culpable mental state with regard to a particular element or elements of that offense, the prescribed culpable mental state shall be required only as to specified element or elements, and a culpable mental state shall not be required as to any other element of the offense.

In setting forth the offense of second-degree robbery, § 570.025.1 uses the phrase "forcibly steals," which is defined by § 570.010(13) as "in the course of stealing, us[ing] or threaten[ing] the immediate use of physical force upon another person *for the purpose of*" preventing resistance to the taking of the property or compelling the handing over of the property (emphasis added). Thus, because the stealing element of second-degree robbery assigns a *mens rea* of purposefully, no specific mental state is required for the injury element of that offense. *See* § 562.021(2). Theoretically, under § 570.025, a person could commit second-degree robbery by forcibly stealing property and injuring a person in the course thereof recklessly or with criminal negligence; in such instances, a criminal defendant would not fulfill the knowingly *mens rea* requirement of § 565.054 to commit third-degree assault. Therefore, as it is possible to commit second-degree robbery without necessarily committing third-degree assault, third-degree assault

9

is not a lesser-included offense of second-degree robbery.[6,7] *Derenzy,* 89 S.W.3d at 474;

*Tremaine,* 315 S.W.3d at 777; *see also* § 556.046.1(1). As a result, Defendant's claim of plain

error does not facially establish substantial grounds showing that manifest injustice or a

miscarriage of justice occurred because his Fifth Amendment right against double jeopardy was

violated.

Point I is denied.

---

[6] Defendant asserts that the Western District's holding in *State v. Elliot,* 987 S.W.2d 418 (Mo. App. W.D. 1999) is determinative of the outcome in this case. In *Elliot,* the Western District succinctly held that, under the then-effective statutes, first-degree assault was a lesser-included offense of first-degree robbery. *Elliot,* 987 S.W.2d at 422. At the time the defendant in *Elliot* committed the acts at issue, a person committed first-degree robbery if he or she forcibly stole property and caused serious physical injury to any person, *see* § 569.020.1 (Mo. Rev. Stat. Cum. Supp. 1996), while first-degree assault was defined as "attempt[ing] to kill or knowingly caus[ing] or attempt[ing] to cause serious physical injury to another person," *see* § 565.050.1 (Mo. Rev. Stat. Cum. Supp. 1996). Similar to § 570.025, § 569.020.1 (Mo. Rev. Stat. Cum. Supp. 1996) used "forcibly steals" in defining first-degree robbery, and "forcibly steals" was similarly defined under § 569.010(1) (Mo. Rev. Stat. Cum. Supp. 1996) as it is under the current version of § 570.010(13). However, § 562.021 was substantively different at the time the Western District decided *Elliot* compared to the current version of that statute. Of particular importance, what is established by the current version of § 562.021(2) (that a *mens rea* is not required for all elements of an offense where the definition of that offense prescribes a culpable mental state for other element(s) of the offense) was not in effect. Consequently, at the time *Elliot* was decided, a mental state of knowingly or purposefully would have been required under § 562.021 (Mo. Rev. Stat. Cum. Supp. 1996) for the injury element of first-degree robbery.

The absence of what is currently stated in § 562.021(2) when *Elliot* was decided significantly affects the statutory analyses that the Western District underwent in *Elliot* compared to that which we conduct in this case; unlike our analysis in this case, there was no basis for the Western District in *Elliot* to compare the required *mens reas* of first-degree assault (§ 565.050.1 (Mo. Rev. Stat. Cum. Supp. 1996)) and the injury element of first-degree robbery (§ 569.020.1 (Mo. Rev. Stat. Cum. Supp. 1996)). Instead, the Western District relied solely upon *dicta* from a footnote contained in the Supreme Court of Missouri's decision, *McTush,* 827 S.W.2d at 188 n.1, to conclude that first-degree assault was a lesser-included offense of first-degree robbery under the then-effective statutes. *See Elliot,* 987 S.W.2d at 422. Considering the substantive differences between the effective versions of § 562.021 and that the Western District's analysis in *Elliot* was supported only by such *dicta,* we are unpersuaded that *Elliot* is instructive in this case. Defendant's assertion that we follow *Elliot,* and implicitly ignore that § 570.025 assigns a *mens rea* of purposefully to the stealing element of second-degree robbery by using "forcibly steals" such that the injury element of the offense does not require a mental state pursuant to § 562.021(2), is contrary to the statutory analysis that well-established precedent instructs this Court to conduct. *See Horton,* 325 S.W.3d at 479; *Derenzy,* 89 S.W.3d at 474; *Tremaine,* 315 S.W.3d at 777.

[7] We note that, while the decision in *State v. Whiteley,* 184 S.W.3d 620, 623 (Mo. App. S.D. 2006) concluded that third-degree assault was a lesser-included offense of second-degree robbery, the then-effective versions of the statutes setting forth those offenses differed significantly from those now in effect. Specifically, as the Southern District stated in *Whiteley,* § 569.030 (Mo. Rev. Stat. Cum. Supp. 2003) defined second-degree robbery simply as forcibly stealing property, while several acts could constitute third-degree assault under § 565.070 (Mo. Rev. Stat. Cum. Supp. 2003), including "knowingly caus[ing] physical contact with another person knowing the other person will regard the contact as offensive or provocative…." As there are substantial differences between the effective versions of the statutes, including that § 569.030 (Mo. Rev. Stat. Cum. Supp. 2003) lacked the injury element that § 570.025 now contains, we find that *Whiteley* is not persuasive to our decision in this case.

Point II

In his second point on appeal, Defendant contends that the trial court plainly erred in not answering the jury's question asked during deliberation regarding whether Defendant's fists could be considered a "dangerous instrument." Specifically, Defendant claims that the trial court's statement to the jury that it be guided by the provided instructions and the evidence presented as the jury recalled it was erroneous because not directly answering allowed the jury to determine a legal question for itself. As we find that it was not incorrect for the trial court to refer the jury to the instructions given and the evidence presented, Defendant's claim of plain error does not facially establish substantial grounds showing that manifest injustice or a miscarriage of justice occurred.

"The response to a jury question is within the sound discretion of the trial court and the practice of exchanging communications between the judge and jury is not commended." *State v. Brandolese,* 601 S.W.3d 519, 532 (Mo. banc 2020) (quoting *State v. Guinn,* 58 S.W.3d 538, 548 (Mo. App. W.D. 2001)). "[N]eutral and generic responses about being guided by the evidence presented and following the instructions previously given are the safest, most favored responses." *Moore,* 518 S.W.3d at 885 (citing *Roberts v. State,* 232 S.W.3d 581, 584 (Mo. App. E.D. 2007)); *see also Brandolese,* 601 S.W.3d at 533 ("Responses that simply refer the jury to the proper instructions already given are not improper.").

In this case, Defendant asserts that the trial court's refusal to directly answer the jury's question asking whether Defendant's fists could be considered a dangerous instrument was error because *State v. Evans,* 455 S.W.3d 452 (Mo. App. E.D. 2014) clearly holds that a defendant's fists do not meet the statutory definition of a "dangerous instrument." While Defendant's characterization of *Evans* is correct, the evidence and arguments presented in this case greatly

11

differ from those in *Evans*. In *Evans,* the State actually argued that the defendant in that case had committed armed criminal action with his fists. *Id.* at 454. Here, in contrast, significant evidence was presented at trial supporting that Defendant used a landscaping brick when he robbed and assaulted Victim; specifically, Victim's testimony that Defendant hit him with the landscaping brick, Victim's neighbor's testimony regarding the severity of Victim's head wound and Victim's statements to her that Defendant hit him with a brick, the forensic evidence showing that Defendant's DNA was found on landscaping bricks on Victim's property and that one such brick was missing from a landscaping arrangement, and that Victim needed 19 stitches for the gash above his eyebrow all support that Defendant used something other than his fists (i.e., the landscaping brick) in committing the crimes at issue. Additionally, the trial court gave the jury instructions on the charged and requested offenses (including armed criminal action and lesser-included offenses) and an instruction correctly defining "dangerous instrument" as "any instrument, article or substance which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury[.]" *See* § 556.061(20).

Considering the charges against Defendant, the arguments made by the State, and the evidence presented supporting that Defendant used something other than his fists in robbing and assaulting Victim, we will not find that the trial court plainly erred in directing the jury to be guided by the provided instructions and the evidence as the jury recalled it. "Dangerous instrument" was defined in an instruction given to the jury, and evidence was presented at trial showing that Defendant used such a dangerous instrument in committing the crimes at issue. Defendant did not object to the instructions that the trial court gave to the jury at the close of the case, and he does not argue on appeal that those instructions were erroneous or insufficient; nor did he object to the trial court's answer to the jury's question. Although the holding in *Evans*

answers the jury's question, the court's response was well within its discretion and was "the safest, most favored response[]." *See Moore,* 518 S.W.3d at 885; *Roberts,* 232 S.W.3d at 584; *Brandolese,* 601 S.W.3d at 533. Thus, Defendant's claim of plain error does not facially establish substantial grounds showing that manifest injustice or a miscarriage of justice occurred because the trial court refused to answer the jury's question.

Point II is denied.

### IV.      Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
Colleen Dolan, P.J.

Mary K. Hoff, J., concurs.
Robert M. Clayton III, J., concurs.