ROBERT M. CLAYTON III, Judge
Roy Brown ("Defendant") appeals the judgment, following a jury trial, convicting him of eight counts of second-degree robbery, one count of attempted second-degree *108 robbery, three counts of first-degree robbery, and one count of resisting arrest. On appeal, Defendant argues, (1) there was insufficient evidence to convict him of one count of attempted second-degree robbery and one count of first-degree robbery; and (2) the trial court's written sentence and judgment contains clerical mistakes.
Because we find there was sufficient evidence from which a reasonable juror could have found Defendant guilty of the attempted second-degree robbery and first-degree robbery convictions he challenges on appeal, and because Defendant does not challenge any of his other eleven convictions, we affirm the judgment of convictions. However, we remand with instructions to the trial court to enter a nunc pro tunc order to correct clerical mistakes in the written sentence and judgment that fail to accurately denominate Defendant's counts and convictions, fail to accurately memorialize the jury's verdicts, and fail to accurately memorialize the trial court's sentences as announced in open court.
I. BACKGROUND
Defendant was charged with ten counts of second-degree robbery, one count of attempted second-degree robbery, and three counts of first-degree robbery for incidents that occurred in the downtown St. Louis area from approximately November 26-December 23, 2015. Defendant was also charged with one count of resisting arrest for an incident that occurred on or about December 23, 2015.
A jury trial took place on Defendant's charges from January 30-February 2, 2017. At the close of the State's evidence and at the close of all of the evidence, Defendant filed motions for judgment of acquittal with respect to all fifteen charges. The trial court denied the motions.
The jury found Defendant guilty of all charges except for two second-degree robbery charges. Defendant then filed a motion for a new trial, alleging the trial court erred in denying his motions for judgment of acquittal. The trial court denied Defendant's motion for a new trial.
After holding a sentencing hearing on March 9, 2017, the trial court entered a written sentence and judgment convicting Defendant of eight counts of second-degree robbery, one count of attempted second-degree robbery, three counts of first-degree robbery, and one count of resisting arrest. Pursuant to both the trial court's oral pronouncement of sentence at Defendant's sentencing hearing and the trial court's written sentence and judgment, Defendant was sentenced to a total of sixty years of imprisonment. Defendant appeals.[1]
II. DISCUSSION
Defendant raises three points on appeal. In his first and second points, Defendant challenges the sufficiency of the evidence to support two of his convictions. In Defendant's third point, he argues the trial court's written sentence and judgment contains clerical mistakes.
A. Defendant's Sufficiency of the Evidence Claims
In Defendant's first and second points on appeal, he challenges the sufficiency of the evidence to support his convictions for one count of attempted second-degree robbery and one count of first-degree robbery.
*109 1. The Standard of Review
Appellate review of a claim that there was insufficient evidence to support a criminal conviction is limited to a determination of "whether the [S]tate has introduced sufficient evidence from which a reasonable juror could have found each element of the crime beyond a reasonable doubt." State v. Hosier , 454 S.W.3d 883, 898 (Mo. banc 2015). In making that determination, great deference is given to the trier of fact, and an appellate court will not weigh the evidence anew. State v. Nash , 339 S.W.3d 500, 509 (Mo. banc 2011). Additionally, all evidence and inferences favorable to the State are accepted as true, and all contrary evidence and inferences are disregarded. Id.
The State may meet its burden of proof by presenting either direct or circumstantial evidence connecting the defendant to each element of the crime. State v. Burns , 444 S.W.3d 527, 529 (Mo. App. E.D. 2014). Furthermore, circumstantial evidence is given the same weight as direct evidence in considering whether there was sufficient evidence to support a conviction. Id. at 528-29.
2. The Relevance of the Language in the Verdict Directors
We initially note that Defendant's sufficiency of the evidence claims are based upon language in the verdict directors for the attempted second-degree robbery and first-degree robbery offenses he challenges on appeal. Defendant is essentially claiming that to convict him of those offenses, the State had to prove Defendant's exact conduct alleged in the verdict directors. A similar argument was recently addressed in detail and rejected by this Court in State v. Voss , 488 S.W.3d 97, 108-10 (Mo. App. E.D. 2016), where we held in relevant part:
[I]n determining a sufficiency of the evidence claim, we are not concerned with the language of the verdict-directing instruction submitted to the jury. Instead ... we are concerned only with whether there is sufficient evidence to support the charged crime, based on the elements of the crime as set forth by statute and common law and the evidence adduced at trial.
Id. at 109 (internal citations omitted).
Accordingly, Defendant's reliance upon the conduct alleged in the verdict directors is misplaced, and we will determine whether there is sufficient evidence to support Defendant's convictions for attempted second-degree robbery and first-degree robbery based on the elements of the crimes as set forth by statute and common law and the evidence adduced at trial. See id. at 109-10 (similarly finding); cf. State v. Simmons , 233 S.W.3d 235, 238-39, 239 n.2 (Mo. App. E.D. 2007) (referring to language in the verdict director in holding there was insufficient evidence to support a conviction for second-degree statutory sodomy under circumstances distinguishable from the instant case, where the State conceded there was no affirmative evidence of an element of the offense).
3. Defendant's Attempted Second-Degree Robbery Conviction at Issue on Appeal
In Defendant's first point on appeal, he contends there was insufficient evidence to convict him of one count of attempted second-degree robbery relating to an incident involving victim Ashish Patel that took place on or about December 5, 2015 (Count V).[2]
*110 a. The Relevant Facts
On the night of December 4-5, 2015, Patel and his wife Ofilea Torres were staying at the Hilton hotel in downtown St. Louis. Shortly before midnight, Patel and Torres went outside a side entrance of the hotel to smoke, and they were approached by three men. One of the men punched Patel in face and "knocked [him] cold on the ground," causing Patel to be "out" for about six or seven minutes. When Patel awoke, the three men were gone, police were at the scene, and none of Patel's items were taken.
During the time Patel was "knocked out," one of the men took Torres's purse, which contained several items including her credit cards. Torres screamed and banged on the windows of the hotel to draw attention, and several people came rushing outside to help Torres and Patel. After Patel awoke, he logged into Torres's credit card accounts, and he saw four or five unauthorized transactions had taken place in East St. Louis, Illinois shortly after Torres's purse had been stolen, including one unauthorized transaction at an ATM at the Casino Queen. Defendant later admitted to police that he had taken Torres's purse and he used Torres's card to take money from the ATM at the casino.
Defendant was charged with one count with respect to his conduct involving Torres (Count IV)[3] and with one count with respect to his conduct involving Patel (Count V). Count IV alleged Defendant committed second-degree robbery in that he forcibly stole Torres's purse. Count V alleged Defendant committed attempted second-degree robbery in that he, inter alia , "knocked [ ] Patel to the ground ..., and such conduct was a substantial step toward the commission of the crime of robbery in the second degree, and was done for the purpose of committing such robbery in the second degree."[4] The jury found Defendant guilty of both counts.
b. The Relevant Law and Analysis
In this case, Defendant claims there was insufficient evidence to convict him of attempted second-degree robbery relating to the incident involving Patel under a theory of accomplice liability (Count V). A person commits the crime of second-degree robbery "when he forcibly steals property." Section 569.030.1 RSMo 2000.[5] Section 569.010(1) provides in pertinent part:
*111 [A] person 'forcibly steals', and thereby commits robbery, when, in the course of stealing ... he uses or threatens the immediate use of physical force upon another person for the purpose of:
(a) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or
(b) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft[.]
A person is guilty of an attempt to commit a particular offense when, "with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense." Section 564.011.1. "A 'substantial step' is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." Id. (emphasis omitted). Whether an act or conduct constitutes a "substantial step" towards the commission of the offense depends on the facts of each particular case. State v. Kusgen , 178 S.W.3d 595, 601 (Mo. App. W.D. 2005). Finally, "[a]ccomplice liability requires a showing that the defendant acted with another 'with the purpose of promoting the commission of an offense.' " Jackson v. State , 535 S.W.3d 347, 350 (Mo. App. E.D. 2016) (quoting section 562.041.1(2) ).
Accordingly, to convict Defendant of attempted second-degree robbery under a theory of accomplice liability in Count V, the State must have proven beyond a reasonable doubt that, in accordance with the above statutes and case law, (1) Defendant or another person committed an act; (2) such conduct was a substantial step toward the commission of the offense of second-degree robbery; (3) Defendant or another person engaged in such conduct for the purpose of committing such second-degree robbery; and (4) with the purpose of promoting the commission of second-degree robbery, Defendant acted with another person or persons in committing the offense. See id. ; sections 569.030.1, 569.010(1), and 564.011.1; see also Hosier , 454 S.W.3d at 898 ; Voss , 488 S.W.3d at 108-10 ; Kusgen , 178 S.W.3d at 601 ; MAI-CR3d 304.06 (effective July 1, 2013); MAI-CR3d 304.04 (effective Sept. 1, 2003).
Viewing the evidence and reasonable inferences in the light most favorable to the verdict, see Nash , 339 S.W.3d at 509, the record in this case contains sufficient evidence to support a finding that the State proved the aforementioned elements beyond a reasonable doubt. Defendant or another man Defendant acted with punched Patel, knocked him to the ground, and rendered him unconscious for six to seven minutes. After Torres screamed and banged on the windows of the hotel to draw attention, the men fled the scene. Patel had items on his person, but none were taken. A reasonable juror could have concluded the act of punching and knocking Patel unconscious was a substantial step towards the commission of second-degree robbery, the requisite intent was proven, and had Torres not loudly summoned for help, Defendant and/or his accomplices would not have withdrawn from the conduct directed at Patel but would have instead completed the offense of second-degree robbery by stealing Patel's *112 property. See State v. Thompson , 414 S.W.2d 261, 263-65 (Mo. 1967) (finding sufficient evidence for attempted first-degree robbery where, inter alia , the defendant physically hurt the victim, did not try to take her property, and fled the scene after she screamed for help); State v. Applewhite , 771 S.W.2d 865, 867-68 (Mo. App. E.D. 1989) (finding sufficient evidence for second-degree robbery where the defendant pushed a victim, knocked him up against the door, and stole property); see also State v. Rayburn , 457 S.W.3d 760, 762-64 (Mo. App. E.D. 2014) (finding sufficient evidence for attempted forcible sodomy where, inter alia , "the impetus for [the defendant's] withdrawal from his criminal activity did not initiate with him").
Defendant argues that, "[a]t most, the evidence established [ ] Patel was struck and knocked to the ground as part of a plan to take [ ] Torres's purse." We disagree, based not only on the evidence discussed in the preceding paragraph, but also because of the manner in which Defendant was charged and the instructions submitted to the jury. Defendant was charged with separate counts with respect to his conduct involving Torres and Patel (Counts IV and V, respectively), and there was a separate instruction submitted to the jury for each count. The jury was also instructed: "[ ] [D]efendant is charged with a separate offense in each of the [ ] counts submitted to you. Each count must be considered separately." We presume the jury followed this instruction and considered Counts IV and V separately in finding Defendant guilty of each offense. See State v. McFadden , 391 S.W.3d 408, 421 (Mo. banc 2013) ("[j]uries are presumed to follow the instructions").
Based on the foregoing, there was sufficient evidence to support Defendant's conviction for attempted second-degree robbery relating to the incident involving Patel under a theory of accomplice liability (Count V). Point one is denied.
4. Defendant's First-Degree Robbery Conviction at Issue on Appeal
In Defendant's second point on appeal, he asserts there was insufficient evidence to convict him of one count of first-degree robbery relating to an incident involving victims Shadia Wade and David Famdino, which took place on or about December 23, 2015 (Count XIII).[6]
a. The Relevant Facts
At about 4:30 p.m. on or about December 23, 2015, Wade and Famdino were walking together in downtown St. Louis. As they were near the intersection of 8th Street and Washington Avenue, a man later identified as Defendant approached Wade and tried to take her purse. A struggle between Defendant and Wade occurred, which resulted in Wade being dragged on the ground until Defendant finally obtained the purse and began to run away. Famdino chased Defendant, who turned and yelled at Famdino that he would shoot him if he did not stop following him. Defendant subsequently got into a blue, four-door sedan, and the vehicle fled the scene. Wade called the police as Famdino was chasing after Defendant, and she provided officers with the description and license plate number for the vehicle.
Officers pursued the car until it finally stopped, and Defendant was apprehended by police. Officers found Wade's purse in the trunk of the vehicle and some items from her purse on Defendant's person. In *113 a photo lineup and at trial, Famdino identified Defendant as the man who stole Wade's purse and threatened to shoot him if he did not stop following him.
Count XIII alleged Defendant committed first-degree robbery in that he "forcibly stole a purse in the possession of [ ] Wade, and in the course thereof [ ] [D]efendant threatened the immediate use of a dangerous instrument against [ ] Famdino." After hearing the above evidence, the jury found Defendant guilty of Count XIII.
b. The Relevant Law and Analysis
A person commits the crime of first-degree robbery when, inter alia , "he forcibly steals property and in the course thereof he ... threatens the immediate use of a dangerous instrument against any person[.]" Section 569.020.1(3).
In this case, Defendant does not dispute there was sufficient evidence he stole Wade's purse. Instead, he only contends there was insufficient evidence to show he threatened the immediate use of a dangerous instrument against Famdino "in the course" of stealing the purse from Wade because Defendant threatened to shoot Famdino after he had already obtained the purse. This argument lacks merit pursuant to the plain language of section 569.010(1)(a) and our Court's recent decision in State v. Whittaker , No. ED105515, 551 S.W.3d 498, 2018 WL 1915805 (Mo. App. E.D. Apr. 24, 2018) (case mandated on Aug. 22, 2018).
As previously stated, section 569.010(1) provides in pertinent part:
[A] person 'forcibly steals', and thereby commits robbery, when, in the course of stealing ... he uses or threatens the immediate use of physical force upon another person for the purpose of:
(a) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking ....
(emphasis added). In Whittaker , our Court explained the history and impact of the "forcible stealing" requirement found in section 569.020.1(3) and defined in section 569.010(1)(a):
The rule in Missouri has traditionally been that the force, violence or intimidation necessary to prove robbery must precede or be contemporaneous with the taking of the property. This changed when the criminal code was amended, effective January 1, 1979, to require 'forcible stealing' for the crime of robbery. The force, violence or intimidation can now occur after the taking but it must still be 'in the course of stealing' in that it occurs immediately after the taking in an effort to overcome resistance to retention of the property. In other words, the force being used immediately after the taking to thwart attempts to prevent retention of the property is part of a whole, single transaction. In the course of stealing is a broad phrase that covers the whole transaction or occurrence.
551 S.W.3d at 501-02, 2018 WL 1915805 at *3 (internal quotations and citations omitted).
In this case, immediately after Defendant took Wade's purse, he began to run, and Famdino chased Defendant. Defendant then turned and yelled at Famdino that he would shoot him if he did not stop following him, and Defendant subsequently left the scene with Wade's purse. A reasonable juror could have found from this evidence that Defendant threatened the immediate use of a dangerous instrument against Famdino for the purpose of preventing or overcoming resistance to the taking of the purse or to the retention thereof immediately after the taking. See id. at 502-06, 2018 WL 1915805 at *3-5 *114 (similarly holding where the evidence demonstrated that, inter alia , immediately after the defendant stole property and he was confronted by the victim, the defendant told the victim "to get back or he would cut him," and the defendant did not abandon the property); section 569.010(1)(a); see also section 569.020.1(3). In other words, a reasonable juror could have concluded from the evidence that Defendant threatened the immediate use of a dangerous instrument against Famdino in the course of stealing Wade's purse. See id.
Based on the foregoing, there was sufficient evidence to support Defendant's conviction for first-degree robbery relating to the incident involving Wade and Famdino (Count XIII). Point two is denied.
5. Conclusion as to the Judgment of Convictions
Because we find there was sufficient evidence from which a reasonable juror could have found Defendant guilty of the attempted second-degree robbery and first-degree robbery convictions he challenges on appeal and because Defendant does not challenge any of his other eleven convictions, we affirm the judgment of convictions. See State v. Williams , 409 S.W.3d 428, 430, 434-35 (Mo. App. E.D. 2013) and State v. Anderson , 386 S.W.3d 186, 188 (Mo. App. E.D. 2012) (affirming judgments of convictions under similar circumstance).
B. Defendant's Claim that the Trial Court's Written Sentence and Judgment Contains Clerical Mistakes
In Defendant's third and final point on appeal, which is conceded by the State, he argues the trial court's written sentence and judgment contains clerical mistakes, and as a result, this Court should remand the cause with instructions to the trial court to enter a nunc pro tunc order to correct the clerical mistakes. For the reasons discussed below, we agree.[7]
1. The Relevant Law
A clerical mistake in the written sentence and judgment in a criminal case is an error that occurs as a result of an oversight or omission but does not effect a substantive change to the defendant's rights. State v. Moore , 518 S.W.3d 877, 889 (Mo. App. E.D. 2017) (citing McGuire v. Kenoma, LLC , 447 S.W.3d 659, 663 (Mo. banc 2014) ); State v. Harding , 528 S.W.3d 362, 380 (Mo. App. E.D. 2017). A clerical mistake occurs where the written sentence and judgment does not accurately reflect the history of the criminal proceedings and what actually occurred. Moore , 518 S.W.3d at 889 (citing State v. Lemasters , 456 S.W.3d 416, 426 (Mo. banc 2015) ).
Clerical mistakes occur when, inter alia , a written sentence and judgment, (1) fails to accurately denominate defendant's counts and convictions on each count; (2) fails to accurately memorialize the jury's verdicts; and/or (3) fails to accurately memorialize the trial court's decision as it was announced in open court. See State v. McClurg , 543 S.W.3d 78, 83 (Mo. App. S.D. 2018) (failed to accurately denominate a count and conviction); Harding , 528 S.W.3d at 380 (failed to accurately memorialize the jury's verdicts and the trial court's decision announced in open court); State v. Woods , 357 S.W.3d 249, 256 (Mo. App. W.D. 2012) (same); see also *115 Johnson v. State , 446 S.W.3d 274, 276 (Mo. App. E.D. 2014) ("because a defendant has a right to be present at the time of sentencing, the trial court's written sentence and judgment should generally reflect the court's oral pronouncement of sentence given to the defendant") (quotations omitted). Such clerical mistakes may be corrected by a nunc pro tunc order if there is a basis in the record to support a correction and if the trial court's intentions regarding the defendant's sentences are clear from the record. See Moore , 518 S.W.3d at 889 ; see also McClurg , 543 S.W.3d at 83 ; Harding , 528 S.W.3d at 380 ; Woods , 357 S.W.3d at 256.
2. The Relevant Procedural Posture Preceding the Trial Court's Written Sentence and Judgment
In order to explain the clerical mistakes in the trial court's written sentence and judgment in this case, we must first set out the relevant procedural posture, which consists of the proper denomination of Defendant's counts, the jury's verdicts, and the trial court's decision announced in open court.
a. The Proper Denomination of Defendant's Counts
In this case, the proper denomination of Defendant's fifteen counts is found in the jury instructions and last charging document filed in the underlying proceedings (the Substitute Information with Renumbered Counts for Jury Trial filed on January 27, 2017 at 3:23 p.m.[8] ). According to those documents, the denomination of Defendant's counts, which includes the type of crime charged, the name of the victim(s) when applicable, and the date of the offense, are as follows.
Counts I and II are second-degree robbery charges relating to incidents involving victims Bradley Kasper and Daniel Bruehl, respectively, that took place on or about November 26, 2015. Count III is a second-degree robbery charge relating to an incident involving victim Christopher Atkinson, which occurred on or about December 1, 2015. Count IV is a second-degree robbery charge relating to an incident involving victim Ofilea Torres that took place on or about December 5, 2015. Count V is an attempted second-degree robbery charge relating to an incident involving victim Ashish Patel, which occurred on or about December 5, 2015. Count VI is a second-degree robbery charge relating to an incident involving victim Glenna James that took place on or about December 11, 2015. Count VII is a second-degree robbery charge relating to an incident involving victim Daniel Perotta, which occurred on or about December 13, 2015. Counts VIII and IX are second-degree robbery charges relating to incidents involving victims Kyle Heikkila and Sarah Bergman, respectively, that took place on or about December 15, 2015. Count X is a second-degree robbery charge relating to an incident involving victim Mariah Keller, which occurred on or about December 20, 2015. Count XI is a second-degree robbery charge relating to an incident involving victim Justin Durel that took place on or about December 22, 2015.
Counts XII, XIII, and XIV are first-degree robbery charges relating to incidents involving victims Abby Jensen, Shadia Wade and David Famdino, and Joel Evangelista, respectively, which took place on or about December 23, 2015. And finally, Count XV is a resisting arrest charge relating to an incident involving law enforcement officers Marco Christlieb and *116 Alex Klein that took place on or about December 23, 2015.
b. The Jury's Verdicts and the Trial Court's Decision Announced in Open Court
On February 2, 2017, the jury entered verdicts on separate verdict forms for each one of Defendant's fifteen counts as they were described in the previous subsection. The jury found Defendant guilty of Counts I, II, IV, V, VI, VIII, IX, X, XI, XII, XIII, XIV, and XV, and the jury found Defendant not guilty of Counts III and VII. At Defendant's March 9, 2017 sentencing hearing, the trial court accurately announced the jury's guilty verdicts in open court stating, "[t]his matter is before the [c]ourt for sentencing pursuant to the verdict of the jury finding [D]efendant guilty on Counts I, II, IV, V, VI, VIII, [ ] IX, X, XI, XII, XIII, XIV and XV."
At the March 9 sentencing hearing, the trial court sentenced Defendant to a term of imprisonment on each of the counts upon which the jury found Defendant guilty. The trial court's oral pronouncement of Defendant's sentence in open court specifically provides: with respect to Counts I, II, IV, V, VI, and VIII, Defendant is sentenced to five years of imprisonment consecutive to all counts; with respect to Counts IX, X, and XI, Defendant is sentenced to five years of imprisonment concurrent to all counts; with respect to Counts XII, XIII, and XIV, Defendant is sentenced to ten years of imprisonment consecutive to all counts; and with respect to Count XV, Defendant is sentenced to four years of imprisonment concurrent to all counts. In other words, the trial court sentenced Defendant to a total of sixty years of imprisonment.
3. The Written Sentence and Judgment
The written sentence and judgment is correct with respect to Count VIII in that it denominates the count as a second-degree robbery charge occurring on December 15, 2015 and properly states Defendant's conviction on Count VIII is for the class B felony of second-degree robbery, which is consistent with how the count is denominated in the jury instructions and last charging document filed in the underlying proceedings. The written sentence and judgment also accurately memorializes the jury's guilty verdict on Count VIII and accurately memorializes the trial court's oral pronouncement of sentence for that count-five years consecutive to all counts-as announced in open court. Therefore, there are no clerical mistakes in the written sentence and judgment with respect to Count VIII.
However, the written sentence and judgment contains multiple clerical mistakes regarding the remaining fourteen counts (Counts I-VII and Counts IX-XV), which all stem from the trial court's failure to properly denominate those counts with respect to the type of crime charged and/or the date of the offense for each count as that information is set out in the jury instructions and last charging document filed in the underlying proceedings (the Substitute Information with Renumbered Counts for Jury Trial filed on January 27, 2017 at 3:23 p.m.). From this Court's review of the record, it appears the trial court mistakenly denominated Counts I-VII and Counts IX-XV as they are set forth in obsolete charging documents in the record.[9]
*117 For example, with respect to Count I, the jury instructions and Substitute Information with Renumbered Counts for Jury Trial denominate the count as a second-degree robbery charge involving victim Bradley Kasper on or about November 26, 2015. However, the written sentence and judgment mistakenly denominates Count I as a first-degree robbery charge occurring on December 23, 2015, which is consistent with how obsolete charging documents in the record denominate Count I as a first-degree robbery charge relating to the incident involving victims Shadia Wade and David Famdino that took place on or about December 23, 2015. As a result of this oversight, the written sentence and judgment incorrectly states the jury found Defendant guilty of first-degree robbery in Count I and incorrectly states Defendant's conviction on Count I is for the class A felony of first-degree robbery, instead of correctly stating the jury found Defendant guilty of second-degree robbery in Count I and correctly stating Defendant's conviction on Count I is for the class B felony of second-degree robbery. In addition, the written sentence and judgment mistakenly sentences Defendant on Count I to a term of ten years of imprisonment consecutive to all counts,[10] whereas the trial court's oral pronouncement of Defendant's sentence in open court sentences Defendant on Count I to five years of imprisonment consecutive to all counts.
We hold the oversights and omissions in the written sentence and judgment with respect to Count I-the failure to accurately denominate the count and Defendant's conviction, the failure to accurately memorialize the jury's guilty verdict, and the failure to accurately memorialize the trial court's sentence as it was announced in open court-are clerical mistakes. See McClurg , 543 S.W.3d at 83 ; Harding , 528 S.W.3d at 380 ; Woods , 357 S.W.3d at 256 ; see also Johnson , 446 S.W.3d at 276. Similar clerical mistakes occur in the written sentence and judgment with respect to Counts II-VII and Counts IX-XV.
Specifically, with respect to Counts II, IV, V, VI, X, XI, XII, XIV, and XV, the written sentence and judgment erroneously denominates the counts and Defendant's convictions, fails to accurately memorialize the jury's guilty verdicts, and fails to accurately memorialize the trial court's sentences as they were announced in open court. Regarding Counts III and VII, the written sentence and judgment erroneously denominates the counts, fails to accurately memorialize the jury's not guilty verdicts, and improperly purports to convict and sentence Defendant on those counts. And finally, with respect to Counts IX and XIII, the written sentence and judgment erroneously denominates the counts, fails to accurately memorialize the jury's guilty verdicts, fails to convict and sentence Defendant on these counts, and fails to accurately memorialize the trial court's sentences as they were announced in open court. In sum, the written sentence and judgment contains multiple clerical *118 mistakes with respect to Counts I-VII and Counts IX-XV.[11] See id.
4. The Remedy for the Clerical Mistakes in the Written Sentence and Judgment
Based upon the proper denomination of Counts I-VII and Counts IX-XV in the jury instructions and the Substitute Information with Renumbered Counts for Jury Trial, the jury's verdicts, and the trial court's oral pronouncement of sentences set out in detail above in Section II.B.2. of this opinion, there is a basis in the record to support a correction to the trial court's written sentence and judgment in this case. In addition, the trial court's intentions regarding Defendant's sentences are clear from the record in that both the written sentence and judgment and the trial court's oral pronouncement of Defendant's sentences indicate he is to be sentenced to a total of sixty years of imprisonment and as follows: with respect to five of Defendant's second-degree robbery charges and Defendant's one attempted second-degree robbery charges, Defendant is sentenced to five years of imprisonment consecutive to all counts; with respect to the remaining three of Defendant's second-degree robbery charges, Defendant is sentenced to five years of imprisonment concurrent to all counts; with respect to Defendant's three first-degree robbery charges, Defendant is sentenced to ten years of imprisonment consecutive to all counts; and with respect to Defendant's resisting arrest charge, Defendant is sentenced to four years of imprisonment concurrent to all counts. Because there is a basis in the record to support a correction to the written sentence and judgment and because the trial court's intentions regarding the defendant's sentences are clear from the record, the clerical mistakes may be corrected by a nunc pro tunc order. See Moore , 518 S.W.3d at 889 ; see also McClurg , 543 S.W.3d at 83 ; Harding , 528 S.W.3d at 380 ; Woods , 357 S.W.3d at 256.
Furthermore, because of the nature of the clerical mistakes in the written sentence and judgment in this case with respect to Counts I-VII and Counts IX-XV-the failure to accurately denominate the counts and Defendant's convictions, the failure to accurately memorialize the jury's verdicts, and the failure to accurately memorialize the trial court's sentences as announced in open court-and because the clerical mistakes impact fourteen of Defendant's fifteen counts, remand with instructions to the trial court to enter a nunc pro tunc order is the proper remedy.[12] See McClurg , 543 S.W.3d at 83 and *119 Harding , 528 S.W.3d at 380 and Woods , 357 S.W.3d at 256 (finding remand with instructions to the trial court correct the written sentence and judgment was the proper remedy under similar circumstances). On remand, we instruct the trial court to enter a nunc pro tunc order to correct the clerical mistakes in the written sentence and judgment by, (1) properly denominating Counts I-VII and Counts IX-XV as they are set out in the jury instructions and the Substitute Information with Renumbered Counts for Jury Trial; (2) properly denominating Defendant's convictions on Counts I-II, Counts IV-VI, and Counts IX-XV; (3) accurately memorializing the jury's verdicts on Counts I-VII and Counts IX-XV; and (4) accurately memorializing the trial court's sentences on Counts I-VII and Counts IX-XV as announced in open court.[13] Point three is granted.
III. CONCLUSION
Based on the foregoing, we affirm the judgment of convictions, but we remand for the trial court to correct the clerical mistakes in the written sentence and judgment in a manner consistent with this opinion.
Roy L. Richter, P.J., and Angela T. Quigless, J., concur.

To avoid unnecessary repetition, additional facts relevant to each of Defendant's points on appeal will be set forth in Sections II.A. and II.B. of this opinion.

For the reasons explained in Section II.B. of this opinion, the underlying charge and Defendant's resulting conviction for the incident involving Patel are properly denominated as Count V.

For the reasons explained in Section II.B. of this opinion, the underlying charge and Defendant's resulting conviction for the incident involving Torres are properly denominated as Count IV.

Count V also alleged Defendant "rummaged through [Patel's] pockets," and it appears there was no evidence presented at trial that this specific conduct took place. Defendant does not argue on appeal that the State was required to prove the conduct because it was alleged in the substitute information. Nevertheless, we find sua sponte that the alleged conduct of rummaging through Patel's pockets is mere surplusage the State was not required to prove in order to convict Defendant of attempted second-degree robbery. This is because, (1) the language of the charging document informed Defendant of the offense charged and, as explained below, the facts ultimately proven fell within the definition of the offense of attempted second-degree robbery under a theory of accomplice liability; and (2) Defendant does not argue or demonstrate his defense was impaired by any variance between the substitute information and the evidence presented at trial. See State v. Edwards , 510 S.W.3d 374, 379-80 (Mo. App. E.D. 2017) and State v. Bradshaw , 411 S.W.3d 399, 402-03 (Mo. App. S.D. 2013) and State v. Nelson , 334 S.W.3d 189, 195-98 (Mo. App. W.D. 2011) (finding language in an indictment was mere surplusage under similar circumstances).

Sweeping changes to the Missouri Criminal Code ("the Criminal Code") went into effect on January 1, 2017 and resulted in some of the criminal statutes applicable in this case being amended and/or transferred to another section of the Criminal Code. All further statutory references to criminal statutes in this opinion are to RSMo 2000, which were the versions of the statutes in effect at the time the events giving rise to Defendant's charges occurred, and the January 1, 2017 changes to the Criminal Code are not relevant to this appeal.

For the reasons explained in Section II.B. of this opinion, the underlying charge and Defendant's resulting conviction for the incident involving Wade and Famdino are properly denominated as Count XIII.

The various clerical mistakes that we find are present in the written sentence and judgment in this case are either, (1) raised by Defendant and conceded by the State; (2) raised by the State in its respondent's brief; or (3) found by this Court sua sponte. See State v. Allison , 326 S.W.3d 81, 94-95 (Mo. App. W.D. 2010) and State v. Page , 309 S.W.3d 368, 374 (Mo. App. E.D. 2010) (finding clerical mistakes under similar circumstances).

As explained in footnote 9 of this opinion, the precise time the Substitute Information with Renumbered Counts for Jury Trial was filed is relevant.

We note that one of the obsolete charging documents apparently relied upon by the trial court is the Substitute Information in Lieu of Indictment filed on January 27, 2017 at 3:17 p.m. This filing took place just six minutes prior to the time the last charging document (the Substitute Information with Renumbered Counts for Jury Trial) was filed in the underlying proceedings on January 27, 2017 at 3:23 p.m. We also note that Count XIII is the only count denominated the same in both the obsolete charging documents in the record and in the Substitute Information with Renumbered Counts for Jury Trial, which explains why the trial court's written sentence and judgment is correct as to Count VIII for the reasons discussed above.

We note that ten years of imprisonment consecutive to all counts was the sentence the trial court announced in open court for Defendant's first-degree robbery charges (which were designated as Counts XII, XIII, and XIV in the jury instructions and last charging document filed in the underlying proceedings).

We find it is unnecessary to go through a detailed comparison of how Counts II-VII and Counts IX-XV are denominated in the jury instructions and last charging document filed in the underlying proceedings versus how they are denominated in the written sentence and judgment and obsolete charging documents in the record. Similarly, we find it is unnecessary to go through a detailed comparison of the purported sentences in the written sentence and judgment for each count versus the trial court's oral pronouncement of Defendant's sentences in open court for each count. Such detailed comparisons would not be in the interests of judicial economy, would not assist the trial court upon remand, and would not provide readers of this opinion with any significant precedential value.

We note Missouri Supreme Court Rule 30.23 (2018) permits our Court to correct and affirm as modified a trial court's written sentence and judgment containing clerical mistakes that, unlike here, are simply "erroneous as to the time or place of imprisonment." Missouri Supreme Court Rule 30.23 (2018); see, e. g. , State v. Wilson , 489 S.W.3d 349, 356 n.5, 357-58 (Mo. App. E.D. 2016) (correcting and affirming as modified under a former, identical version of Rule 30.23 where the written sentence and judgment simply reflected a different term of imprisonment than the one set forth in the trial court's oral pronouncement of sentence). Our Court has also applied former, identical versions of Rule 30.23 to correct and affirm and modify a trial court's written sentence and judgment in other simple circumstances, such as when the judgment improperly classified the defendant as a dangerous, prior, or persistent offender. See, e.g., State v. Norman , 431 S.W.3d 563, 566, 571-72 (Mo. App. E.D. 2014) (improper classification as a dangerous offender); State v. Robinson , 353 S.W.3d 448, 449-50, 449 n.2 (Mo. App. E.D. 2011) (improper classification as a prior offender); State v. Williams , 306 S.W.3d 183, 184-85 (Mo. App. E.D. 2010) (improper classification as a persistent offender). Because there are multiple clerical mistakes in this case impacting fourteen of Defendant's counts, and because other appellate courts have remanded under circumstances similar to those here, we find remand is the appropriate remedy in the instant case. See McClurg , 543 S.W.3d at 83 ; Harding , 528 S.W.3d at 380 ; Woods , 357 S.W.3d at 256.

See Section II.B.2. of this opinion for a detailed explanation of the proper denomination of Defendant's counts and convictions, the jury's verdicts, and the trial court's sentences as announced in open court.