

# In the Missouri Court of Appeals
# Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111096 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Francois County |
| v. | ) | |
| | ) | Honorable Wendy L. Wexler Horn |
| JOSHUA P. HANKINS, | ) | |
| | ) | |
| Appellant. | ) | Filed: November 21, 2023 |

Defendant Joshua P. Hankins appeals the judgment entered upon the jury's verdict finding him guilty of two counts of first-degree statutory sodomy, Section 566.062 RSMo. Defendant contends the trial court's instructions to the jury violated his constitutional right to a unanimous verdict. Specifically, Defendant claims that multiple distinct acts of contact related to each count were presented to the jury but that the jury instructions failed to specifically identify any one of these incidents to ensure that the jury unanimously agreed to the same incident of statutory sodomy in finding him guilty.

We hold that this case is governed by the recent decision of the Supreme Court of Missouri, *State v. Hamby*, 669 S.W.3d 76 (Mo. banc 2023), and that the nature of the evidence abated any risk that the jury did not substantially agree to the same act or acts described in the jury instructions to support the verdicts. The trial court's jury instructions, therefore, did not violate Defendant's constitutional right to a unanimous verdict. We affirm Defendant's judgment of convictions.

However, we must remand to the trial court for the limited purpose of directing the trial court to enter an order *nunc pro tunc* to correct clerical mistakes in the trial court's written judgment.

### Factual and Procedural Background

Defendant's convictions arise out of sexual abuse perpetrated against his step-daughter [Victim].[1] When Victim was twelve years old, Victim disclosed to a family friend that Defendant had put his penis and fingers in her vagina. Victim also stated that she had seen "white stuff" come out of Defendant's penis. The friend called Victim's mother. Victim then told her mother that Defendant had touched her inappropriately, including putting his penis in her.

Mother took Victim to the hospital, where Victim told a social worker that Defendant had molested her for five or six years. When asked what she meant by being molested, Victim stated that Defendant had put his "boy private parts," his fingers, and his tongue inside of her front private parts. Victim explained that the abuse happened on the weekend when her mother was at work. When asked how many times this had happened, Victim answered that she "didn't know; a lot." Victim further explained that after she started her period, Defendant stopped using his tongue and his "thingamajigger," and only used his fingers.[2] She stated that he abused her two times after she started her period and then the abuse stopped.

Mother next took Victim to the Children's Advocacy Center for a forensic interview. A recording of this interview was admitted into evidence and played for the jury at trial. Victim told the interviewer that Defendant had molested her for about six years. Victim could not tell the interviewer about the first time it happened, but said the incidents started when she was five, six, or seven years old. Victim knew that the abuse was already occurring when she was eight years old. Victim also told the interviewer that the abuse happened multiple times.

---

[1] Defendant does not contest the sufficiency of the evidence to support his convictions.
[2] "Thingamajigger" is the vernacular that Victim used to reference Defendant's penis.

Victim related that the abuse happened in Defendant's bedroom and that he always locked the door. Victim said that the incidents only happened on the weekends or rarely on weekdays, and that the abuse happened in the daytime. Defendant initiated the incidents by asking Victim "Do you want to snuggle?" Victim stated that when she went to Defendant's bedroom, he would "put his thingamajigger," or "boy's private part," in her "private part;" that he put his fingers in her "private part;" and that he "put his tongue" in her "private part," all during the same day. Victim described a "random time" early on, when she was five, six, or seven years old, when Defendant put his hand up her shirt, took her shirt off, unzipped her pants and took her pants off. When asked by the interviewer to describe another time the abuse happened, Victim said that "it was all pretty much the same thing … the entire list of everything [she] just told [the interviewer] just happening again." Victim related a time that she said occurred on a Saturday or Sunday, and said that it involved the three different types of touching she had described earlier in the interview. Victim lastly stated that Defendant only put his fingers in her after she started her period, which occurred when she was eleven or twelve years old.

Based on Victim's disclosures, the State charged Defendant with one count of first-degree statutory sodomy alleging mouth-to-genital contact and one count of first-degree statutory sodomy alleging hand-to-genital contact with the victim.[3] Both charges alleged that Defendant committed these offenses between June 1, 2014 and October 12, 2018. The time-period charged ended on Victim's eleventh birthday.

The case proceeded to a jury trial. Victim testified that Defendant began to sexually abuse her when the family moved to St. Francois County. Victim believed she was six years old at the time. Victim testified that Defendant "put his penis inside [her][vagina]," that he "put his mouth

---

[3] The State also charged Defendant with one count of statutory rape. The jury found Defendant not guilty of this charge.

on [her] vagina," and that he "put his fingers in [her] vagina." She further testified that every time it happened, the "same kind of things would happen." Victim explained that the abuse always took place in her parents' bedroom while her mother was at work and that the abuse usually happened in the morning. Victim could not say how many times the abuse happened, and she did not know any of the dates on which the abuse happened, but stated that the abuse happened "way too many" times, and that it happened over a period of years. During her deposition prior to trial, Victim stated that the abuse happened five times a week over a five-year period. At trial, she testified that the abuse occurred less than five times a week over a five-year period. Victim admitted she could only give a general story about what happened and that she could not say what year anything really happened or what really happened on any given day. Victim could not tell [anyone] "one single thing about what [Defendant] did to [her] on any particular day at any particular time in any particular circumstance…." Victim lastly explained that the abuse only happened approximately two times after she started having her period, which Victim stated began when she was eleven years old. The abuse then stopped. Defendant only used his fingers on these last occasions.

The trial court submitted a verdict director for each charged count of first-degree statutory sodomy, over Defendant's objections.[4] Instruction No. 5 was the verdict-directing instruction for the charged offense of mouth-to-genital contact:

INSTRUCTION NO. 5

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about June 1, 2014, to October 12, 2018, in the County of St. Francois, State of Missouri, the defendant knowingly had deviate sexual intercourse with [Victim], by placing his mouth on [Victim's] genitals, and

Second, that at the time [Victim] was a child less than twelve years old,

---

[4] Defendant objected based on *State v. Celis-Garcia*, 344 S.W.3d 150 (Mo. banc 2011), arguing the verdict directors did not specify a specific event and that Victim did not identify a specific act at trial.

4

then you will find the defendant guilty under Count I of statutory sodomy in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term "deviate sexual intercourse" means any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person, done for the purpose of arousing or gratifying the sexual desire of any person.

Instruction No. 6 was the verdict-directing instruction for the charged offense of hand-to-genital contact:

## INSTRUCTION NO. 6

As to Count II, if you find a believe from the evidence beyond a reasonable doubt:

First, that on or about June 1, 2014, to October 12, 2018, in the County of St. Francois, State of Missouri, the defendant knowingly had deviate sexual intercourse with [Victim] by touching [Victim's] genitals with his hand, and

Second, that at the time [Victim] was a child less than twelve years old,

then you will find the defendant guilty under Count II of statutory sodomy in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term "deviate sexual intercourse" means any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person, done for the purpose of arousing or gratifying the sexual desire of any person.

The jury found Defendant guilty on each count. The jury sentenced Defendant to twelve years' imprisonment on each count. The trial court ordered that the sentences be served consecutively to each other for a total of twenty-four years in prison. Defendant now appeals.

5

*Analysis*

Defendant raises three points on appeal. One point alleges the trial court erred in executing its written judgment due to clerical errors. We will discuss this allegation at the end of this opinion. In each of the other two points, Defendant claims the trial court erred in submitting the two verdict directors for first-degree statutory sodomy, Instruction No. 5 and Instruction No. 6, as each violated his constitutional right to a unanimous verdict for failure to specify multiple and distinct acts of abuse.

**Preservation**

At the outset, we address the State's contention that Defendant failed to preserve his jury unanimity claims for appellate review. The State argues Defendant objected to the instructions too generally and failed to affirmatively identify any specific details in the evidence that he believed distinguished one act of abuse from another that should have been included in the instructions to protect his right to a unanimous verdict. The State, therefore, suggests this Court apply plain error review.

This same scenario was recently addressed by the Supreme Court of Missouri in *State v. Hamby*. As in *Hamby*, the State's position in this case is justified. At trial, Defendant timely objected to the verdict directors and clearly set forth the grounds for his objection. Defendant argued the verdict directors did not specify a specific event and cited *State v. Celis-Garcia*, 344 S.W.3d 150 (Mo. banc 2011), which addresses jury unanimity in cases involving multiple, separate acts that could establish a single charged offense. Defendant, however, did not identify the specific details in the evidence he believed distinguished one act of abuse from another that should have been included in the instructions. Now on appeal Defendant identifies for the first time allegedly distinctive details in the evidence based on Victim's age and the day of the week. Because he did

not specify these distinct acts in his objection, the trial court was left to guess what, if any, evidence distinguished the alleged acts of sodomy and what should have been included in the instructions to resolve Defendant's jury unanimity objection. *Hamby*, 669 S.W.3d at 83. "Child sexual abuse cases frequently involve allegations of repeated abuse occurring over a span of time described in a vague and generalized manner by a young child who is unable to specify or distinguish in a meaningful way when, where, and how each act of abuse occurred." *Id*. "In these types of cases, it places a high burden on the circuit court to determine what distinguishing facts, if any, should be included in the instructions to resolve a general objection to a jury instruction based on jury unanimity." *Id*.

Despite the shortcomings in his objections, and as the Supreme Court did in *Hamby*, this Court will presume for purposes of its review that Defendant properly preserved the issues raised in his appeal because his claims on appeal fail regardless of this Court's preservation finding.[5] *Id*.

**Standard of Review**

Whether a jury was instructed properly is a question of law that this Court reviews *de novo*. *Id*. When reviewing claims of instructional error, this Court will reverse the trial court's decision only if the instructional error misled the jury and, thereby, prejudiced the defendant. *Id*.

**Jury Unanimity**

The United States and Missouri Constitutions require juries to deliberate and arrive at a unanimous verdict to find the accused guilty of a felony criminal offense.[6] *Id*. at 84; U.S. Const. amend. VI; Mo. Const. art I, sec. 22(a). "[A] unanimous verdict requires 'substantial agreement' among jurors 'as to the defendant's acts, as a preliminary step to determining guilt.'" *Hamby*, 669

---

[5] Plain error review is discretionary and requires a showing of evident, obvious, and clear error resulting in a miscarriage of justice. Preserved instructional error, on the other hand, merely requires establishing error resulting in prejudice. *State v. Hamby*, 669 S.W.3d 76, 83 n.4 (Mo. banc 2023).
[6] The offense of first-degree statutory sodomy is a felony offense. Section 566.062.2.

S.W.3d at 84 (quoting *State v. Celis-Garcia*, 344 S.W.3d 150, 155 (Mo. banc 2011)). "A defendant's constitutional right to a unanimous verdict may be jeopardized in cases involving 'multiple acts' of criminal conduct because jurors could base their verdict on differing conduct." *Hamby*, 669 S.W.3d at 84. "A multiple acts case arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." *Id*.

Defendant contends this is a multiple-acts case. He argues there was clear evidence of multiple, distinct acts based on Victim's age and the day of the week. The verdict directors, however, did not specify a particular incident of first-degree statutory sodomy according to Victim's age or day of the week but instead generally instructed the jury to determine if Defendant placed his mouth or touched Victim's genitals on or between certain dates. We address each verdict director in turn.

**Point I: Instruction No. 6**

Defendant alleges the trial court erred in submitting Instruction No. 6, the verdict director for Count II, hand-to-genital contact, because the evidence showed multiple, distinct acts of hand-to-genital contact based on Victim's age as well as day of the week, but the instruction did not specify a particular act of hand-to-genital contact.

As to the purported evidence of distinct acts based on Victim's age, Defendant points to Victim's interview when she said that the touching started when she was five, six, or seven years old, and then her testimony that the last time the touching happened was when she was eleven years old, after she had started her period. Defendant claims this evidence shows multiple distinct acts – one "early on" and then when Victim was eleven years old.

8

Victim indeed described separate incidents – those "early on" and then two incidents that occurred after she started her period. However, the incidents after Victim started her period, when she was eleven or twelve years old, are outside the time frame set out in both the charging document and the verdict director. Defendant was charged with, and the jury was instructed to find Defendant guilty based on conduct occurring from June 1, 2014, to October 12, 2018. The ending date of this time period, October 12, 2018, was Victim's eleventh birthday. The evidence also showed that Victim started having her period in August 2019. Defendant was not charged with any conduct after Victim turned eleven years' old and started her period. Thus, any incidents described after October 12, 2018 are not relevant and there are no separate, multiple distinct acts based on Victim's age, as Defendant contends. Failing to specify Victim's age in the instruction did not violate Defendant's right to a unanimous verdict.

As to the purported evidence of distinct acts based on days of the week, Defendant points to Victim's interview, when she related a time that occurred "on a Saturday or Sunday" when the same acts occurred. Defendant draws a distinction between this statement and other incidents testified to by Victim, which Defendant contends must have occurred on a weekday. Thus, he contends the evidence showed multiple distinct acts. Here, Victim repeated identical sexual acts without sufficiently distinguishing when the acts occurred. Victim stated it happened over five years and it was the same acts. Victim's vague and generalized accounts of abuse did not raise distinct acts from which the jury could differentiate.

Even if we presume Victim described separate, distinct incidents occurring on different days of the week, there is no error and no violation of Defendant's right to a unanimous verdict. "Evidence suggesting multiple acts is not separate and distinct if the multiplicity evidence is dependent on a previous act occurring." *Hamby*, 669 S.W.3d at 88. "The concern in jury

9

unanimity cases is that jurors will find guilt without substantially agreeing to the same underlying criminal act." *Id*. "When the only evidence suggesting multiple acts is dependent on the evidence of other acts, this concern is abated as there is no longer a risk the jury will not substantially agree to the same acts." *Id*.

Here, the evidence relating to an incident of sexual abuse occurring on a Saturday or Sunday was directly related to, and dependent upon, the abuse occurring at other times. When asked about the incident occurring on a Saturday or Sunday, the victim specifically stated that it involved the three different types of touching described earlier in the interview. Victim said that "it was all pretty much the same thing … the entire list of everything [she] just told [the interviewer] just happening again." Victim had previously told the interviewer that Defendant would put his boy's private part, his fingers, and his tongue in her private part. She told the interviewer that Defendant would commit these three acts all during the same day. At trial, Victim testified that Defendant would put his penis in her, would put his fingers in her vagina, and that he would put his tongue on her vagina, and that every time Defendant molested her, the "same kind of things would happen." The evidence regarding the weekend incident was predicated upon the repeated abuse Victim described normally occurring each time. Victim could not distinguish any particular dates or days, she just knew the abuse happened "way too many times." Accordingly, there was no risk the jury could conclude that Defendant engaged in sexual misconduct on that described weekend day without also believing he committed the same misconduct on other days of the week. The nature of the evidence abated any risk that the jury did not substantially agree to the same act or acts described in the jury instructions in finding Defendant guilty of the charged offense. Failing to specify the day of the week in the instruction, therefore, did not violate Defendant's right to a unanimous verdict.

10

The trial court did not error in submitting Instruction No. 6 to the jury.  We deny this point and affirm Defendant's conviction.

**Point II:  Instruction No. 5**

Defendant alleges the trial court erred in submitting Instruction No. 5, the verdict director for Count I, mouth-to-genital contact, because the evidence showed multiple, distinct acts of mouth-to-genital contact occurring on different days of the week, but the instruction did not specify a particular act of mouth-to-genital contact but instead generally instructed the jury to determine if Defendant placed his mouth on the victim's genitals on or between certain dates.  As he argued in the prior point, Defendant contends the evidence showed a distinct act that occurred on a Saturday or Sunday, which he contends is separate and distinct from other incidents testified to by Victim, which Defendant contends must have occurred on a weekday.

This point fails for the same reason as just discussed.  The evidence relating to an incident of sexual abuse occurring on a Saturday or Sunday was directly related to, dependent and predicated upon the repeated abuse Victim described normally occurring each time.  Accordingly, there was no risk the jury could conclude that Defendant engaged in sexual misconduct on that described weekend day without also believing he committed the same misconduct on other days of the week.  The nature of the evidence abated any risk that the jury did not substantially agree to the same act or acts described in the jury instructions in finding Defendant guilty of the charged offense.  Failing to specify the day of the week in the instruction, therefore, did not violate Defendant's right to a unanimous verdict.

The trial court did not error in submitting Instruction No. 5.  We deny this point and affirm Defendant's conviction.

11

**Point III: Clerical Errors in Written Judgment**

Though we deny Defendant's first two points and affirm his convictions for first-degree statutory sodomy, we grant his third point on appeal regarding clerical mistakes in the trial court's written judgment. Defendant contends the written judgment contains clerical mistakes and requests remand for the trial court to correct the written judgment pursuant to Rule 29.12(c). The State agrees that the written judgment contains clerical mistakes and states this Court should remand for the trial court to enter a *nunc pro tunc* order correcting the written judgment. This Court agrees.

The record clearly shows that Defendant was charged by second substitute information with three counts: (I) Statutory Sodomy First Degree – Deviate Sexual Intercourse – Person Less Than 12 Years of age … Section 566.062; (II) Statutory Sodomy First Degree – Deviate Sexual Intercourse – Person Less Than 12 Years of Age …Section 566.062; and (III) Statutory Rape First Degree – Person Less Than 12 Years of Age.

The case proceeded to trial on this second substitute information and the three charges therein. The record clearly shows that the jury found Defendant guilty on Count I and Count II and acquitted him on Count III. The written judgment, however, does not reflect this outcome, in three respects.

First, the written judgment incorrectly denominates the two charges for which Defendant was convicted as "amended to" "Sodomy or Attempted Sodomy – 1st Degree – Victim is Less than 12 years old …Section 566.060." Defendant was charged with, and convicted of, "Statutory Sodomy First Degree – Deviate Sexual Intercourse – Person Less Than 12 Years of Age … Section 566.062."

Second, the written judgment incorrectly denominates the charges for which Defendant was convicted as "Charge #2" and "Charge #3." Defendant was convicted on charge #1 and charge #2 (Counts I and II).

Third, the written judgment omits any mention of the charged offense of first-degree statutory rape, Count III, or the acquittal on that count.

"A clerical mistake in the written sentence and judgment in a criminal case is an error that occurs as a result of an oversight or omission but does not effect a substantive change to the defendant's rights." *State v. Brown*, 558 S.W.3d 105, 114 (Mo. App. E.D. 2018). "A clerical mistake occurs where the written sentence and judgment does not accurately reflect the history of the criminal proceedings and what actually occurred." *Id*. Clerical mistakes occur when, *inter alia*, a written sentence and judgment fails to accurately denominate defendant's counts and convictions on each count and/or fails to accurately memorialize the jury's verdicts. *Id*.

"Clerical errors in the sentence and judgment in a criminal case may be corrected by an order *nunc pro tunc* if the written judgment does not reflect what actually was done." *State v. Lemasters*, 456 S.W.3d 416, 426 (Mo. banc 2015). "In a criminal case, Rule 29.12(c) allows the court to amend its records according to the truth, so that they should accurately express the history of the proceedings which actually occurred prior to the appeal." *Lemasters* (internal quotation omitted). Clerical mistakes may be corrected by a *nunc pro tunc* order "if there is a basis in the record to support a correction and if the trial court's intentions regarding the defendant's sentences are clear from the record." *Brown*, 558 S.W.3d at 115.

The trial court's written judgment does not accurately reflect what occurred during Defendant's trial. The judgment fails to accurately denominate the counts and Defendant's convictions and it fails to accurately memorialize the jury's verdicts. The trial court's written

13

judgment thus contains clerical mistakes. A basis exists in the record to support the corrections, and the trial court's intentions regarding Defendant's sentences are clear from the record. Accordingly, this is a proper circumstance – indeed, the prototypical circumstance – for an order *nunc pro tunc* correcting the written judgment to reflect what actually occurred. *Lemasters*, 456 S.W.3d at 426; *Brown*, 558 S.W.3d at 118.

We grant this point.

### *Conclusion*

We affirm the judgment of conviction but remand for the trial court to enter an order *nunc pro tunc* to correct the clerical mistakes in the trial court's written judgment in a manner consistent with this opinion.

_____
Angela T. Quigless, Judge

Lisa P. Page, P.J. and
Gary M. Gaertner, Jr., J., concur.

14