

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | WD85149 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | August 1, 2023 |
| ANTWOINE R. KING, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Bryan E. Round, Judge**

**Before Division One:**  Anthony Rex Gabbert, Presiding Judge, and
Lisa White Hardwick and Mark D. Pfeiffer, Judges

Mr. Antwoine King ("King") appeals from the judgment entered by the Circuit

Court of Jackson County, Missouri, following a jury trial in which he was found guilty of

two counts of robbery in the first degree, three counts of armed criminal action, one count

of assault in the second degree, one count of resisting a lawful stop, and one count of

unlawful possession of a firearm.  He was sentenced by the trial court as a prior and

persistent offender.  King challenges his sentence as a persistent offender and the

sufficiency of the evidence to support his convictions for first-degree robbery and unlawful possession of a firearm. We affirm.

## Factual and Procedural Background[1]

On June 7, 2019, a patrol officer of the Kansas City, Missouri, Police Department was dispatched on a robbery call to a Phillips 66, also known as the Bannister Road Food Mart. The officer interviewed the night clerk, who told him that three masked individuals, all black men, came into the store and robbed him at gunpoint. After one of the men took money out of the register, another put bottles of liquor, including E&J apple brandy, in a trash bag. The officer also reviewed the store's surveillance video, which showed the suspects leaving the store at 2:12 a.m.

Also on June 7, 2019, another investigative officer responded to an armed robbery report at a Snap and Go Gas Station on East Bannister Road in south Kansas City. The officer interviewed the female victim ("Victim"), who provided a description of the suspects' vehicle, a four-door white Kia with a black roof and tinted windows, and partial license plate information. According to Victim, she and her boyfriend pulled into the Snap and Go around 2 a.m. on June 7, 2019. Two men approached their vehicle, one on each side, and pointed guns at them. One of the men pointed a 9-millimeter pistol at Victim, who was in the driver's seat, and the other man pointed a big gun that looked like an Uzi at Victim's boyfriend. The suspects told Victim to hand over everything that she

---

[1] "We view the evidence in the light most favorable to the jury's verdict, disregarding all contrary evidence and inferences." *State v. Winters*, 623 S.W.3d 746, 747 n.1 (Mo. App. W.D. 2021).

had. She gave them "whatever I had on me." After the suspects robbed Victim and her boyfriend, they drove away in a white Kia Optima with a black top.

A third patrol officer ("Arresting Officer") was on patrol with his partner on June 7, 2019. When he started his shift, he learned that a white Kia Optima with a black top had been used in robberies overnight. During their patrol, the officers saw a vehicle that appeared to match that description. They followed the vehicle to 35th Street and Park Avenue, and when the vehicle went over the hill, Arresting Officer heard multiple, rapid-firing gunshots. The passenger was out of the vehicle, actively shooting past the intersection.

At the same time, King's uncle was outside in the area of 35th Street and Park Avenue in Kansas City with his great-nephews. King's uncle heard someone screaming, and when he turned around, he saw his nephew, King, standing about fifty feet away at the southeast corner of 35th and Park, holding a handgun. King started shooting and shot about fifteen times. King's uncle pushed his great-nephews out of the way; he took cover behind a tree, but was shot in the left elbow. A police cruiser pulled up behind the car King was standing next to and turned on its siren. King's uncle heard the car speed off and then saw the cruiser follow.

Arresting Officer and his partner pursued the Kia. From 35th and Park, the vehicle turned onto Prospect Avenue, speeding in and out of traffic. Shortly after almost hitting a city worker emerging from a manhole at 21st Street, the driver pulled over and fled on foot. As soon as the driver exited, the passenger moved over into the driver's seat. Arresting Officer and his partner decided to continue to pursue the vehicle. The vehicle

3

was going sixty miles per hour on Prospect Avenue where the speed limit was thirty-five or forty-five miles per hour. The vehicle weaved in and out of traffic and tried to make a left-hand turn at Eastwood Trafficway and Swope Parkway. The vehicle was going too fast; one of the tires hit a hole, and then the vehicle hit a light pole. The driver exited the vehicle and ran into the woods. The officers pursued him and took him into custody. The officers found a small black laser sight for a firearm in his pocket. The officers ultimately identified the person they arrested after this pursuit as King.

An Investigative Officer was dispatched to the intersection of 34th and Park. The Investigative Officer located several shell casings at the intersection and took photographs of five .40 caliber shell casings along the north side of 35th and Park and an additional ten .40 caliber shell casings on the southeast corner of the intersection, and additional three .40 caliber shell casings 25 feet east off the south side of 35th and Park.

Thereafter, a robbery unit Detective obtained a search warrant for the Kia. Inside the vehicle was E&J liquor, a box of .40 caliber ammunition, two handguns, and a pair of tennis shoes with black soles, white tops, and red laces. The Detective also interviewed King's uncle at the hospital. The Detective showed King's uncle two photographs—a still shot of the robbery at the Snap and Go, and a Department of Revenue photo of King—and King's uncle identified King in both photographs. When King was arrested on June 7, 2019, the police recovered a blue Nike jacket and gray sweatshorts. When the Detective viewed the surveillance videos of the robberies, he observed that one of the three armed men wore a blue hoodie, a white T-shirt, gray shorts, and white, red, and black tennis shoes. In the Food Mart video, the black handgun in the left hand of the

4

suspect wearing the blue jacket was consistent with the firearm found in the backseat of the Kia. In the Snap and Go video, the suspect wearing the blue jacket was holding a Mac-11 assault-style sub-machine gun.

King was charged with:

- robbery in the first degree in that he "forcibly stole U.S. currency and liquor in the possession of Food Mart and in the course thereof . . . was armed with a deadly weapon" (Count I);

- armed criminal action in that he "committed the foregoing felony of Robbery in the 1st Degree by, with and through, the knowing use, assistance and aid of a deadly weapon" (Count II);

- robbery in the first degree in that he "forcibly stole a cell phone and U.S. currency in the possession of [Victim], and in the course thereof the defendant was armed with a deadly weapon" (Count III);

- armed criminal action in that he "committed the foregoing felony of Robbery in the 1st Degree by, with and through, the knowing use, assistance and aid of a deadly weapon" (Count IV);

- assault in the second degree in that he "recklessly caused physical injury to [King's uncle] by means of discharge of a firearm" (Count V);

- armed criminal action in that he "committed the foregoing felony of Assault in the Second Degree by, with and through, the knowing use, assistance and aid of a deadly weapon" (Count VI);

- resisting a lawful stop in that "law enforcement officers, were attempting to make a lawful stop of defendant, and the defendant knew or reasonably should have known that the officers were making a lawful stop, and, for the purpose of preventing the officers from effecting the stop, resisted the stop of defendant by fleeing from the officers[,] and defendant fled in such a manner that created a substantial risk of serious physical injury or death to other persons in that defendant drove the vehicle at high rates of speed through heavily populated residential and commercial neighborhoods, running multiple stop signs and red lights" (Count VII);

- unlawful possession of a firearm in that he "knowingly possessed a black 'Mac-11' type sub-compact machine pistol, a firearm, and on August 16, 2016[,] the defendant was convicted of the felony of Robbery in the 2nd Degree in the 16th Circuit of Jackson County" (Count VIII).

On October 8, 2020, the State was granted leave to file an information in lieu of indictment, adding allegations that King was a prior and persistent offender and punishable by sentence to an extended term of imprisonment in that he had been convicted of two or more felonies committed at different times. Specifically, the State alleged that in case number 1516-CR03677-01, on or about August 16, 2016, King was convicted of the felonies of robbery in the second degree and armed criminal action in the Circuit Court of Jackson County, Missouri, for events that occurred on October 13, 2015; and in case number 1516-CR03635-01, on or about August 16, 2016, King was convicted

of the felonies of robbery in the second degree and armed criminal action in the Circuit Court of Jackson County, Missouri, for events that occurred on April 12, 2015.

King did not testify or present any evidence at trial. King moved for acquittal at the close of all the evidence, which the trial court denied. The jury found King guilty as charged. King filed a motion for judgment of acquittal or, in the alternative, for a new trial. The trial court denied the motion.

At the sentencing hearing conducted by the trial court on December 7, 2021, the following colloquy took place:

> THE COURT: Refresh my memory so I don't have to dig through the Court's file, this is court sentencing, correct? Mr. King is a prior, is he also a persistent offender?
>
> [PROSECUTOR]: He is, Judge.
>
> THE COURT: Okay. And we found both of those?
>
> [PROSECUTOR]: That's my recollection.
>
> THE COURT: That's my recollection as well. Mr. Hairston [King's attorney], is that your recollection?
>
> [KING'S ATTORNEY]: Yes, Your Honor.[2]

The trial court inquired as to whether the State or King had evidence to present. Neither presented evidence, but *King's attorney asked the court to take judicial notice of King's probation in two cases*, State v. King, 1516-CR03635-01, and State v. King, 1516-CR03677-01, in each of which King had pleaded guilty to charges of robbery in the second degree and armed criminal action. The trial court entered its judgment and

---

[2] In reality, no such evidence was formally presented to the trial court nor did the trial court make a "persistent offender" finding on the record.

sentenced King as a prior and persistent offender to twenty years' imprisonment on each of the first-degree robbery counts, five years' imprisonment on two of the armed criminal action counts, three years' imprisonment on the third armed criminal action count, ten years' imprisonment on the second-degree assault count, seven years' imprisonment on the resisting a lawful stop count, and five years' imprisonment on the unlawful possession of a firearm count, with all sentences to run concurrently. On January 25, 2022, the trial court entered its amended judgment reflecting that King was found guilty by a jury instead of upon a plea of guilty as indicated in the December 7, 2021 judgment.

King timely appealed.

### Points on Appeal

King asserts four points on appeal.

- In Point I, King contends that the trial court plainly erred in sentencing him as a persistent offender. Specifically, King claims that, in violation of sections 558.016 and 558.021, the State failed to introduce evidence that King was a persistent offender, and the trial court did not make findings warranting a finding beyond a reasonable doubt that King was a persistent offender, prior to submission to the jury.

- In Points II, III, and IV, King argues that the trial court erred in overruling his motion for judgment of acquittal and entering judgment and sentencing him because there was insufficient evidence to support his conviction for first-degree robbery (Point II), armed criminal action (Point III), and unlawful possession of a firearm (Point IV).

8

**Point I**

**Standard of Review**

While sentencing is ordinarily reviewed for abuse of discretion, King concedes that he did not object to the trial court sentencing him as a prior and persistent offender at his sentencing hearing. He is asking this Court to review for plain error under Rule 30.20. Rule 30.20 provides, in pertinent part: "Whether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

Plain error review is a two-step process:

> The first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear. If plain error is found, the court then must proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

*State v. Hilbert*, 663 S.W.3d 462, 465 (Mo. banc 2023) (quoting *State v. Minor*, 648 S.W.3d 721, 731 (Mo. banc 2022)).

**Analysis**

"As a general rule, penalties imposed for the violations of criminal laws are to be governed by statutes in effect at the time of the commission of the crimes." *State v. Cruz-Basurto*, 581 S.W.3d 51, 60 (Mo. App. W.D. 2019) (internal quotation marks omitted). A court may sentence a person who has been found guilty of an offense to an extended term of imprisonment if it finds the defendant is a "persistent offender."

9

§ 558.016.1(1).[3] "A 'persistent offender' is one who has been found guilty of two or more felonies committed at different times." § 558.016.3. "The findings of guilt shall be prior to the date of commission of the present offense." § 558.016.6. If a person is found guilty of a class B, C, D, or E felony, the trial court must sentence the person to the authorized term of imprisonment for the offense that is one class higher than the offense for which the person is found guilty. § 558.016.7.

Section 558.021.1 provides that a defendant will be found to be a persistent offender if the trial court finds:

> (1) The indictment or information, original or amended, or the information in lieu of an indictment pleads all essential facts warranting a finding that the defendant is a . . . persistent offender . . . ; and
>
> (2) Evidence is introduced that establishes sufficient facts pleaded to warrant a finding beyond a reasonable doubt that the defendant is a . . . persistent offender . . . ; and
>
> (3) The court makes findings of fact that warrant a finding beyond a reasonable doubt by the court that the defendant is a . . . persistent offender . . . .

Section 558.021.2 imposes a duty on the court to enter a finding as to persistent offender status *prior to submitting the case to the jury*. "Express findings of fact are an integral component of the ruling. Failure to follow the statute is more than an irregularity, it is error." *State v. Richardson*, 719 S.W.2d 884, 885 (Mo. App. W.D. 1986). Here, the trial court did not observe the directives of the statute because the case was submitted to the

---

[3] The offenses for which King was found guilty were committed on June 7, 2019. Therefore, all statutory references are to the REVISED STATUTES OF MISSOURI 2016, as updated through the 2018 Cumulative Supplement.

jury before the issue was ruled upon; and when a ruling was made, there was no reference to the trial court making findings of fact warranting a finding beyond reasonable doubt by the trial court that King was a persistent offender. Accordingly, based on the facts and circumstances of this case, the trial court committed sentencing error that was evident, obvious, and clear; but the question of whether King suffered a manifest injustice as a result of this error is another matter.

King argues that he suffered manifest injustice because he was sentenced in excess of the maximum term of imprisonment that would be allowed for Counts V and VII without the persistent offender finding.

In Count V, King was convicted of second-degree assault, a class D felony, the authorized term of imprisonment for which is a term of years not to exceed seven. § 558.011.1(4). The trial court sentenced King to an enhanced sentence of ten years' imprisonment on Count V. Under section 558.016.7, a persistent offender found guilty of a class D felony shall be sentenced to a term of imprisonment for the offense that is one class higher than the offense for which the person was found guilty. For a class C felony, the authorized term of imprisonment was a term of years not less than three years and not to exceed ten years. § 558.011.1(3).

In Count VII, King was convicted of resisting a lawful stop, a class E felony, the authorized term of imprisonment for which is a term of years not to exceed four years. § 558.011.1(5). The trial court sentenced King to an enhanced sentence of seven years' imprisonment on Count VII. Under the enhanced sentencing statute, a persistent offender found guilty of a class E felony shall be sentenced to a term of imprisonment for the

11

offense that is one class higher than the offense for which the person was found guilty. § 558.016.7. For a class D felony, the authorized term of imprisonment was a term of years not to exceed seven years. § 558.011.1(4).

Were these two crimes the only two crimes for which King had been sentenced, we would agree that the trial court's sentencing error had resulted in an unauthorized sentence requiring King to serve more than the maximum allowable sentence and such a sentence would constitute a manifest injustice. *See State v. Severe*, 307 S.W.3d 640, 642 (Mo. banc 2010), and *State v. Kimes*, 234 S.W.3d 584, 590 (Mo. App. S.D. 2007) (where criminal defendant's one criminal offense conviction resulted in an unauthorized sentence, it was both plain error and manifest injustice to require the defendant to serve a sentence in excess of the mandatory authorized sentence). However, these cases are inapposite to the present case, since the totality of King's sentences imposed by the trial court, including authorized sentences that King does not challenge, did not result in a sentence requiring King to *actually* serve a number of years of prison time in excess of the maximum prison time to which the trial court was authorized to sentence him.

Here, only two of King's sentences were enhanced, and his sentences for Counts V and VII were to be served ***concurrently*** with the ***longer*** sentences imposed in the ***other counts*** (the longest sentences were imprisonment for twenty years on the first-degree robbery counts, which sentences were not enhanced and which King does not challenge). Thus, the enhanced sentences for Counts V and VII have no impact on the amount of prison time King will ***actually serve*** for the offenses for which he was found

guilty. Under these circumstances, our sister districts have split on how to treat the issue of manifest injustice.

In *State v. Jones*, 619 S.W.3d 138, 154 (Mo. App. E.D. 2021), the Court concluded that the defendant had received authorized sentences on numerous other criminal counts; any value in remanding the case for re-sentencing on the unauthorized sentences would have a negligible impact on sentencing; hence, no manifest injustice had occurred, and the Court refused to find plain error. Conversely, in *State v. Goff*, 439 S.W.3d 785, 794 (Mo. App. S.D. 2014), the Court concluded that even where an unauthorized sentence on one of two counts was merely ordered to be served concurrently with the same sentence imposed on another count and did not increase the defendant's actual time served, the Court remanded the case for resentencing on the unauthorized sentence.

Ultimately, we need not rely upon either *Jones* or *Goff*; for, in this case, we have additional circumstances that are relevant to our manifest injustice analysis. Here, the *defendant*, not the State, has affirmatively offered into evidence the very prior felony convictions that he asserts the trial court is not authorized to rely upon for the "persistent offender" status conclusion by the trial court. In other words, at sentencing, the *defendant* asked the trial court to take into consideration his probation for his prior felony convictions as it related to his counsel's request for sentencing leniency regarding consecutive versus concurrent sentences by the trial court. And, this strategy appears to have worked since the trial court announced sentences that were all to run concurrently. Moreover, when asked by the trial court whether the court had already made a finding

13

that King was a prior and persistent offender, King's counsel incorrectly assured the court that it had, in fact, already made the necessary finding.

In these circumstances—where the defendant is using the facts of his prior felony conviction status and essentially conceding that he is a "persistent" offender, because he is attempting to use this information about his criminal history as a shield—we see no manifest injustice where those same facts resulted in his "persistent" offender status being wielded as a sword, especially where the sword created no actual increase to his total authorized sentence for his criminal convictions.

Accordingly, we conclude that the trial court's plain error did not so prejudice King that a manifest injustice or miscarriage of justice occurred.[4]

Point I is denied.

## Point II

In King's second point, he contends that the State failed to present sufficient evidence to sustain his conviction for Count III, first-degree robbery, because the State

---

[4] We also note that sometimes "theoretical" arguments of trial court error that fail to consider the practical ramifications of "succeeding" on such arguments can open a Pandora's box of additional problems for a defendant. For example, under our ruling as to Point I, King will suffer no practical harm with regard to the *actual* time he will serve under his concurrent sentencing by the trial court. But, if King had prevailed on Point I and we had remanded for re-sentencing on Counts V and VII, there would be nothing (other than the prohibition on retaliatory or vindictive sentencing, *see Alabama v. Smith*, 490 U.S. 794, 798 (1989)) prohibiting the trial court from requiring that one or both of those new "un-enhanced" sentences be served *consecutive* to the other years of sentences that were not appealed from. In that event, King's "prize" for succeeding on the appeal would be that he might *actually* serve a much *longer* term of years for the total sentencing package announced by the trial court on remand. And, at that point, we suspect we would next be looking at a post-conviction relief motion asserting ineffective assistance of appellate counsel.

charged him with forcibly stealing U.S. currency and a cell phone from Victim but no evidence was introduced that anything other than currency was taken from her. The State argues that King's claim is one of variance rather than sufficiency of the evidence. We agree.[5]

## Standard of Review

Because King failed to object at trial on the ground of variance between the charge and proof or include it in his motion for new trial, our review is for plain error only. *State v. Dean*, 382 S.W.3d 218, 223 (Mo. App. S.D. 2012).

## Analysis

As the Eastern District recently observed, "the State must prove the offense as charged. [W]here the act constituting the crime is specified in the charge, the State is held to proof of that act, and the defendant may be convicted only on the basis of that act." *State v. Hartwein*, 648 S.W.3d 834, 845 (Mo. App. E.D. 2022) (citations omitted) (internal quotation marks omitted). "However, . . . not every detail found within a charging document is pertinent to proving an element of the charged offense." *Id.* "Surplusage is the inclusion of words or phrases that are unnecessary to charge the statutory elements of the offense." *Id.* (internal quotation marks omitted). "The purpose

---

[5] Section 546.080 provides that:

> Whenever on the trial of any felony or misdemeanor, there shall appear to be any variance between the statement in the indictment or information and the evidence offered in proof thereof, . . . such variance shall not be deemed grounds for an acquittal of the defendant, unless the court before which the trial shall be had shall find that such variance is material to the merits of the case and prejudicial to the defense of the defendant.

15

of an indictment is to enable the accused to make his defense and to enable him to assert double jeopardy in bar of a further prosecution[.]" *State v. Nelson*, 334 S.W.3d 189, 197 (Mo. App. W.D. 2011) (internal quotation marks omitted). "As long as the act of [robbery] charged falls within the statutory definition and the indictment informs the accused of the charge against him, the details of the commission are generally unnecessary." *Id*. (quoting *State v. Dayton*, 535 S.W.2d 469, 479 (Mo. App. 1976)). "Thus, the language of how [King] committed the crime was surplusage." *Id.* "Any description that does appear in the indictment is, therefore, surplusage and cannot affect the outcome of the trial." *Id.* (internal quotation marks omitted). "The State is not required to prove surplus language in the information." *Id*. *See also* § 545.030.1(14) ("No indictment or information shall be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected:  . . . (14) For any surplusage or repugnant allegation, when there is sufficient matter alleged to indicate the crime and person charged[.]").

"A person commits the offense of robbery in the first degree if he or she forcibly steals property and in the course thereof he or she, or another participant in the offense . . . [i]s armed with a deadly weapon[.]"  § 570.023.1(2).  The State charged King with robbery in the first degree, alleging in Count III that King "either acting alone or purposefully in concert with another or others, forcibly stole a cell phone and U.S. currency in the possession of [Victim], and in the course thereof the defendant was armed with a deadly weapon."  "To prove the elements of first-degree robbery, the State must demonstrate that the defendant forcibly stole property and, in the course thereof, he or

another actor displayed or threatened the use of what appeared to be a deadly weapon or dangerous instrument, such as a gun." *State v. Mason*, 616 S.W.3d 345, 349 (Mo. App. E.D. 2020).

King alleges that there was no evidence presented at trial that he stole a cell phone in the possession of [Victim], and he argues that the State was required to prove the conduct because it was alleged in the charging document. "Although [King] has framed his argument as a sufficiency of evidence argument, it is at most an unpreserved issue of variance in that the charging document varied from the evidence presented at trial." *Nelson*, 334 S.W.3d at 197. Because defense counsel did not object to the variance between the facts alleged in the charging document and the facts proven at trial, our review is for plain error. *Id.*

"In order for the variance to amount to reversible error, [King] must be prejudiced." *Id.* In *State v. Brown*, 558 S.W.3d 105 (Mo. App. E.D. 2018), the State charged that defendant committed attempted second-degree robbery in that he "knocked [ ] Patel to the ground . . . , and such conduct was a substantial step toward the commission of the crime of robbery in the second degree, and was done for the purpose of committing such robbery in the second degree." *Id*. at 110. In the same count, the State also alleged that defendant "rummaged through [Patel's] pockets." *Id*. at 110 n.4. There was no evidence presented at trial that the specific "rummaging" conduct took place, and the defendant did not argue on appeal that the State was required to prove the conduct because it was alleged in the substitute information. *Id*. Nevertheless, the Eastern District found *sua sponte* that the alleged conduct was mere surplusage the State

17

was not required to prove in order to convict the defendant of attempted second-degree robbery because:

> (1) the language of the charging document informed Defendant of the offense charged and . . . the facts ultimately proven fell within the definition of the offense of attempted second-degree robbery under a theory of accomplice liability; and (2) Defendant does not argue or demonstrate his defense was impaired by any variance between the substitute information and the evidence presented at trial.

*Id.* (citing *State v. Edwards*, 510 S.W.3d 374, 379-80 (Mo. App. E.D. 2017); *State v. Bradshaw*, 411 S.W.3d 399, 402-03 (Mo. App. S.D. 2013); *Nelson*, 334 S.W.3d at 195-98 (finding language in an indictment was mere surplusage under similar circumstances)).

Here, the language of the charging document informed King of the offense charged, and the facts ultimately proven—that he forcibly stole U.S. currency from [Victim] while armed with a gun—fell within the definition of the offense of robbery in the first degree. Any description of additional property appearing in the indictment is, therefore, surplusage and could not affect the outcome of the trial. *Nelson*, 334 S.W.3d at 197.

Furthermore, "[t]o be entitled to relief, [King] must demonstrate that he would have been better able to defend his case had the Information not varied from the evidence presented at trial." *Id.* *See also Edwards*, 510 S.W.3d at 380 ("In order to show Defendant was prejudiced by any variance between the indictment and the evidence [presented at trial], he had to show some impairment to his defense."). King has not demonstrated that his defense was impaired by any variance between the charging

18

document and the evidence presented at trial.  The record shows that King's defense was misidentification, and any variance between the charging document and the evidence presented at trial "was immaterial in view of [King's] theory of defense."  *See Nelson*, 334 S.W.3d at 197.  We note that King did not put on any evidence.

King's claim of error of alleged variance does not facially establish substantial grounds for believing that manifest injustice or a miscarriage of justice has resulted.  Therefore, we decline plain error review.  The trial court did not err in denying King's motion for judgment of acquittal.

Point II is denied.

### Point III

In King's third point, he contends that his conviction for armed criminal action as charged in Count IV must be vacated if this Court finds that there was insufficient evidence that he committed the underlying felony of robbery in the first degree as charged in Count III.  Given our resolution of Point II, King's third point is without merit.

Point III is denied.

### Point IV

In King's fourth point, he contends that there was insufficient evidence that he unlawfully possessed a firearm as charged in Count VIII.  Specifically, King argues that the State failed to present sufficient evidence that he was in possession of "a black 'Mac-11' type sub-compact machine pistol" that met the definition of a "firearm," when

the item was not recovered by law enforcement, and there was no testimony or other evidence to support that the weapon could shoot or had been shot.

## Standard of Review

An appellate court's "review of the sufficiency of the evidence to support a criminal conviction is limited to determining whether there is sufficient evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *State v. Minor*, 648 S.W.3d 721, 736 (Mo. banc 2022) (internal quotation marks omitted). "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *Id.* (internal quotation marks omitted).

## Analysis

Section 571.070.1(1) provides that:

> A person commits the offense of unlawful possession of a firearm if such person knowingly has any firearm in his or her possession and: (1) Such person has been convicted of a felony under the laws of this state, or of a crime under the laws of any state or of the United States which, if committed within this state, would be a felony[.]

"The elements of unlawful possession of a firearm are: (1) knowing possession of a firearm (2) by a person who had been convicted of a felony." *State v. Fikes*, 597 S.W.3d 330, 334 (Mo. App. W.D. 2019) (internal quotation marks omitted). In Count VIII of the Information in Lieu of Indictment, the State charged that King committed the class D felony of unlawful possession of a firearm in violation of section 571.070 in that on June 7, 2019, he "knowingly possessed a black 'Mac-11' type sub-compact machine

pistol, a firearm, and on August 16, 2016[,] the defendant was convicted of the felony of Robbery in the 2nd Degree in the 16th Circuit of Jackson County."

King cites no authority for the proposition that a firearm must be operable to support a conviction of unlawful possession of a firearm. To the contrary, section 571.070.1 prohibits the possession of "any firearm," and "firearm" is defined as "any weapon that is *designed* or adapted to expel a projectile by the action of an explosive." § 571.010(8) (emphasis added). There is no requirement in the statute that the firearm be fully operational. "Under the plain language of these statutes, an inoperable or malfunctioning weapon constitutes a firearm as long as it was designed to expel a projectile by the action of an explosive, regardless of whether the weapon can do so successfully." *Long v. State*, 441 S.W.3d 154, 158 (Mo. App. E.D. 2014), *abrogated on other grounds by Booker v. State*, 552 S.W.3d 522, 528 (Mo. banc 2018).

Unlawful possession of a firearm and unlawful use of weapons are both weapons offenses under Chapter 571, and both offenses use the same definition of "firearm" found in section 571.010(8). "[W]hen the same or similar words are used in different places within the same legislative act and relate to the same or similar subject matter, then the statutes are *in pari materia* and should be construed to achieve a harmonious interpretation of the statutes." *Williams v. State*, 386 S.W.3d 750, 754 (Mo. banc 2012) (internal quotation marks omitted).

In *Williams*, Rollan Williams and his wife were separated. *Id*. at 752. He came to her house to retrieve some of his belongings, and they began arguing. *Id*. At some point during the argument, Williams pulled a gun and held it to his wife's head. *Id*. After a

21

verbal exchange with his wife's two adult sons, Williams demanded $100 and left after stating that he was going to kill them all.  *Id*.  Williams was found guilty by a jury of robbery in the first degree, armed criminal action, and unlawful use of a weapon.  *Id*. After his conviction was affirmed on direct appeal, Williams timely filed a Rule 29.15 motion, alleging as one issue that his appellate counsel failed to raise an insufficiency of the evidence claim regarding the weapons charge, arguing that the State failed to prove the firearm he used was capable of lethal use, an element of the unlawful use of a weapon charge, because the gun was never recovered.  *Id*. at 752, 753.  The Missouri Supreme Court determined that although the gun was not found, the testimony was that Williams threatened the victims with the use of a firearm.  *Id*. at 755.  The Court concluded that, given the facts of the case, there was sufficient evidence to submit the case to the jury that Williams's use of the firearm constituted the charge of unlawful use of a weapon.  *Id*. According to the Court, "[a] defendant may not escape conviction under § 571.030.1 merely by ensuring the weapon is discarded or destroyed."  *Id*.  *See also State v. Aborn*, 445 S.W.3d 570, 572 (Mo. App. S.D. 2013) ("A conviction under this statute [§ 571.030.1] does not require the State to produce the weapon in evidence in order to prove the weapon was a firearm.").

Furthermore, "[t]he language of § 571.030.1 in this statutory scheme presumes that a firearm is a 'weapon readily capable of lethal use' without requiring it also be proven at trial that it was functional or loaded."  *Williams*, 386 S.W.3d at 754.  *See also State v. Wright*, 382 S.W.3d 902, 905 (Mo. banc 2012) ("[T]here is no requirement for a firearm to be loaded or operational for a defendant to be convicted under § 571.030.1.");

*State v. Lutjen*, 661 S.W.2d 845, 847 (Mo. App. W.D. 1983) ("To hold that it is incumbent upon the state to prove affirmatively that a pistol . . . which is exhibited in a rude, angry, and threatening manner, is loaded, as a condition precedent to a conviction, would be practically to render the statute unenforceable.").

At trial, the officer who responded to the armed robbery report at the Snap and Go Gas Station testified that Victim told him that when she and her boyfriend pulled into the Snap and Go around 2 a.m. on June 7, 2019, two men approached their vehicle, one on each side, and pointed guns at them. One of the men pointed a 9-millimeter pistol at Victim, who was in the driver's seat, and the other man pointed a big gun that looked like an Uzi at Victim's boyfriend. Additionally, the Detective testified that when he viewed the surveillance videos of the robberies, the Snap and Go video showed the suspect wearing the blue jacket holding a Mac-11 assault-style sub-machine gun.

The surveillance video of the Snap and Go robbery (State's Exhibit 2) was admitted at trial and played for the jury. The video shows a burgundy vehicle parked in the parking area of the Snap and Go Gas Station. A white Kia with tinted windows and a black roof pulls into the gas station, and the driver (King) exits the vehicle and pumps gas. After pumping gas, King approaches the passenger side of the burgundy vehicle brandishing what appears to be a large gun. King's passenger exits the Kia and approaches the driver's side of the burgundy vehicle. In response to King's possession and exhibition of the weapon, the male passenger hands King items, exits the vehicle, raises his arms, and King pats down the passenger's person. King reaches in the burgundy vehicle and removes an object. King and his passenger return to the Kia and

drive away. King admits in his appellate brief that "the item in the surveillance footage certainly *looks like* a real assault-style sub-machine gun." Likewise, King does not dispute that an assault-style sub-machine gun is designed to expel a projectile by the action of an explosive.

The jury viewed the Snap and Go surveillance video, heard the testimony of the police officers and Victim, and drew the reasonable inference that the gun King brandished was a "firearm." Viewing the evidence and all reasonable inferences therefrom in the light most favorable to the verdict, and disregarding any evidence and inferences contrary to the verdict, there was sufficient evidence from which a reasonable jury could have found King guilty beyond a reasonable doubt of unlawful possession of a firearm.

Point IV is denied.

## Conclusion

The trial court's judgment is affirmed.

_____
Mark D. Pfeiffer, Judge

Anthony Rex Gabbert, Presiding Judge, and Lisa White Hardwick, Judge, concur.